## CULP v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. October 25, 1897.)

### No. 4.

USE OF MAILS TO DEFRAUD.

The act of March 2, 1889 (25 Stat. 873), entitled "An act to punish dealers and pretended dealers in counterfeit money and other fraudulent devices for using the United States mails," and which amended Rev. St. § 5480, by inserting therein an enumeration of various ways or devices for using the mails to defraud, did not repeal this section, or narrow its scope to the specific schemes and artifices so specified; and an indictment describing a scheme to defraud by sending letters requesting the persons addressed to sell and ship to defendant articles of merchandise, for which he did not intend to pay, states a·punishable offense, under the statute.

In Error to the District Court of the United States for the Western District of Pennsylvania.

This .was an indictment against J. A. Culp for using the mails to defraud. Defendant, having been convicted in the district court, sued out this writ of error.

James Scarlet and J. H. McDevitt, for plaintiffs in error.
Samuel B. Griffiths, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and KIRKPATRICK, District Judge.

ACHESON, Circuit Judge. The indictment charged the defendant with having devised a scheme to defraud, to be effected by opening communication with certain named persons by means of the post-office establishment of the United States, and that in executing such scheme the defendant deposited in a post office of the United States certain letters, addressed to said persons, to be sent and·delivered to them by the post-office establishment; and the fraudulent scheme particularly set out was this: That, intending to defraud the persons to whom said letters were addressed, the defendant therein and thereby requested the persons· addressed to sell and ship to him certain articles of merchandise, for which he agreed to pay the shippers, whereas, in truth and in fact, he did not intend to pay for said articles, but intended fraudulently to appropriate them and convert them to his own use without paying therefor. There is no doubt that the indictment plainly sets out a scheme to defraud (Evans v. U. S., 153 U. S.

584, 592, 14 Sup. Ct. 934, 939; Weeber v. U. S., 62 Fed. 740), that it was to be effected by means of correspondence through the post-office establishment, and that, in the execution of the scheme, letters were placed in the post office. It is not seriously questioned, and, indeed, cannot be denied, that the indictment charges an offense within the terms and meaning of section 5480 of the Revised Statutes. It is, however, contended on behalf of the plaintiff in error that that section was completely repealed and superseded by the act of March 2, 1889, c. 393, entitled "An act to punish dealers and pretended dealers in counterfeit money and other fraudulent devices for using the United States mails" (25 Stat. 873), and that this later act does not reach such a case as this record discloses. But in this conclusion we are unable to concur. It may be that the act of March 2, 1889, the initial clause of which reads, "Be it enacted," etc., "that section fifty-four hundred and eighty of the Revised Statutes be, and the same is hereby, so amended as to read as follows," superseded said numbered section (5480), and is a complete substitute therefor. But, granting this, it does not follow that the plaintiff in error was wrongfully convicted and sentenced. The first section of the said act of 1889 embodies the whole of the original section 5480, verbatim, and in addition thereto it contains new matter, which is introduced immediately after the words, "If any person having devised or intending to devise any scheme or artifice to defraud," and immediately before the words, "to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside the United States, by means of the post-office establishment of the United States," etc. The addition thus inserted reads:

"Or to sell, dispose of, loan, exchange, alter, give away, or distribute, supply, or furnish, or procure for unlawful use any counterfeit or spurious coin, bank notes, paper money, or any obligation or security of the United States or of any state, territory, municipality, company, corporation, or person, or anything represented to be or intimated or held out to be such counterfeit or spurious articles, or any scheme or artifice to obtain money by or through correspondence, by what is commonly called the 'sawdust swindle,' or 'counterfeit money fraud,' or by dealing or pretending to deal in what is commonly called 'green articles,' 'green coin,' 'bills,' 'paper goods,' 'spurious treasury notes,' 'United States goods,' 'green cigars,' or any other names or terms intended to be understood as relating to such counterfeit or spurious articles. * * *"

Now, we cannot assent to the proposition pressed upon us by counsel for the plaintiff in error, that the act of 1889 was intended to curtail the operation of the original enactment, and to limit the scope of action and application of the law to the particular schemes and artifices specified in the new part of the act of 1889 above quoted. No such limitation, we think, was contemplated or effected by the amendatory act of 1889. In our view, the purpose of the amendment was not to restrict, but to extend, the operation of the statute. The additional clause is introduced disjunctively, and evidently was intended to bring within the prohibition and penalty of the statute schemes, dealings, and transactions relating to counterfeit or spurious money and other articles, to be effected by the use of the United States mails, which were not embraced in the original act. We think it clear

that the provisions of section 5480 of the Revised Statutes were continued in undiminished force and effect by the act of March 2, 1889. This was the practical construction which the courts gave to this act in the cases of Weeber v. U. S., 62 Fed. 740, and U. S. v. Durland, 65 Fed. 408. It is true that it does not appear that the precise question now before us was distinctly raised or discussed by counsel or court in either of those cases, but the very omission is significant. Moreover, the latter case was reviewed by the supreme court (Durland v. U. S., 161 U. S. 306, 16 Sup. Ct. 508), and the conviction was sustained. That case involved the construction of the act of March 2, 1889, and the judgment of affirmance there rendered is equivalent to a direct ruling against the point which the plaintiff in error here makes. The judgment of the district court is affirmed.