## MILBY v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. July 2, 1901.)

### No. 929.

IMPROPER USE OF MAILS—SCHEME TO DEFRAUD—INDICTMENT.

An indictment based on Rev. St. § 5480, as amended by Act March 2, 1889, charging defendant with having devised a scheme to defraud a certain person, to be effected by opening correspondence with such person by means of the post-office establishment of the United States, and, in executing such scheme, with placing a letter directed to such person in a post office of the United States, and setting forth the letter, which contained simply a clear proposition to sell such person counterfeit money at the rate of five dollars for one dollar, the indictment not charging that defendant did not intend to or would not send such counterfeit money on receipt of the price therefor, is insufficient, under such section, since, though the letter proposes a violation of another law, it does not disclose an intent to defraud the person to whom it is addressed.

In Error to the District Court of the United States for the District of Kentucky.

The indictment in this case is based upon section 5480 of the Revised Statutes of the United States, as amended by the act of March 2, 1889 (25 Stat. 873), and embraces three counts. A demurrer having been sustained as to the third count, and overruled as to the first and second counts, the case was submitted to the jury upon the first and second counts, and the trial resulted in a verdict of acquittal on the second count, and conviction on the first count. A motion in arrest of judgment was overruled, and exception duly taken. The defendant was thereupon regularly sentenced to a term of one year and one day in the penitentiary, and the case comes here on writ of error to revise the judgment. The ruling of the court in denying the motion in arrest of judgment is assigned for error, and the sufficiency of the indictment is the sole question presented here for consideration. Section 5480 of the Revised Statutes, as amended, so far as it materially affects the question now to be disposed of, reads as follows: "If any person having devised or intending to devise any scheme or artifice to defraud * * * to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside of the United States, by means of the post-office establishment of the United States, or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice or attempting so to do, place or cause to be placed, any letter * * * in any post office * * * of the United States * * * or shall take or receive any such therefrom, such person so misusing the post-office establishment shall, upon conviction, be punishable," etc.

The first count of the indictment, being the only one with which we are now concerned, may be here given, and is as follows:

"The grand jurors of the United States of America, impaneled and sworn, and charged to inquire in and for the district of Kentucky, on their oaths present: That on the 21st day of August, 1898, J. R. Milby, who was then and there postmaster at Milby, Kentucky, within the district of Kentucky, and within the jurisdiction of this court, did then and there unlawfully, feloniously, and fraudulently devise a scheme and artifice to defraud the postmaster at Albany, Oregon,—the name of which postmaster was then and there T. J. Stites,—out of the sum of one dollar, and divers other sums of

money, the amount of which is to the grand jury aforesaid unknown, to be effected, and which scheme and artifice was then and there by said J. R. Milby intended to be effected, by opening correspondence and communication with the said postmaster at Albany, Oregon, by means of the post-office establishment of the United States, and by inciting the said postmaster at Albany, Oregon, to open correspondence and communication by means of the post-office establishment of the United States with him, the said J. R. Milby. —which said scheme and artifice was then and there as follows: That the said J. R. Milby, for the purpose and with the intent of defrauding the said postmaster at Albany, Oregon, out of the said sum of one dollar and said other sums of money, the amount of which is to the grand jurors aforesaid unknown, and for the purpose and with the intent aforesaid, did then and there write on a piece of paper about the size of a two-dollar silver certificate of the United States, and about the size of what is known as a two-dollar bill of the Confederate States of America, words and figures as follows:

" 'Keep still; the old saying is the still hog drinks the slop; if you will keep still, keep your eyes open, you can make dollars while others make cents; now this paper look like money on the other side, but it isn't; if you want sumthing better send me a one dollar bill, I will send you a 5 dollar bill, if you like it I will send you all you want at ten sents to the dollar, eny size from 1 to 20 dollar bills, that will pass all O. K. eny where; now, if you see fit to answer this letter send a to sent stamp and this bill in a plaine letter, then I will no what you want; be shure to send in plaine letter as I won't sine for Registered letter. Address all orders to

" 'M. J. Hawks,
" 'Postoffice, Milby,
" 'Green Co., Ky.'

"That he would then and there, for the intent and for the fraudulent purpose aforesaid, write said writing upon a piece of paper, on the reverse side of which was then and there a fac simile or representation of the face of what is known as a two-dollar bill of the Confederate States of America, and on which reverse side of said paper there were then and there the following words and figures, to wit:

" 'Richmond.              Feby. 17th, 1864.                        Two.
" 'No.                          2.    43938

" 'Two years after the ratification of a treaty of peace between the Confederate States and the United States of America.

" 'The Confederate States of America
" 'Will pay to the bearer on demand
" 'Two Dollars.
" 'B                                                                              B
" 'E. Coffin,                   N. Goodum,                                 Two
" 'For Register.               For Treasurer.'

"That he, the said J. R. Milby, would then and there, with the intent and for the fraudulent purpose aforesaid, place in said post office of Milby, for mailing, and send said writing and said fac simile or representation of said two-dollar bill of the Confederate States of America, by means of the post-office establishment of the United States, to the said postmaster at Albany, Oregon, with the intent and for the fraudulent purpose of obtaining from said postmaster at Albany, Oregon, the said sum of one dollar, and said other sums of money, the amount of which is to the grand jurors aforesaid unknown, and with the intent and for the fraudulent purpose of then and there inciting the said postmaster at Albany, Oregon, to open correspondence and communication by means of the post-office establishment of the United States with him, the said J. R. Milby. And the grand jurors aforesaid, upon their oaths aforesaid, do further present that the said J. R. Milby, having devised the scheme and artifice with the intent and for the fraudulent purpose aforesaid, did in and for executing said scheme and artifice, and attempting to do so by means of the post-office establishment of the United States, and with the intent unlawfully, fraudulently, feloniously to obtain and retain said sum of one dollar, and said other sums of money, the amount of which

is to the grand jurors aforesaid unknown, that he might receive from said postmaster at Albany, Oregon, in response thereto and by means thereof, and with the intent unlawfully, fraudulently, and feloniously to incite the said postmaster at Albany, Oregon, to open correspondence and communication with him, the said J. R. Milby, by means of the post-office establishment of the United States, on said scheme and artifice, did write, and unlawfully, feloniously, knowingly, and wrongfully place and cause to be placed in said post office of Milby, Kentucky, for mailing, to be sent by means of the post-office establishment of the United States, the aforesaid writing and the said fac simile or representation of said two-dollar bill of the Confederate States of America,—all of which was then and there inclosed and sealed in an envelope, on which was then and there a two-cent postage stamp, and which envelope was then and there addressed as follows:

> " 'Postmaster,
> " 'Albany,
> " 'Oregon.'

"Against the peace and dignity of the United States, and contrary to the form of the statute in such case made and provided."

W. M. Smith, for plaintiff in error.

Before LURTON and SEVERENS, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after making the foregoing statement, delivered the opinion of the court.

The contention on behalf of plaintiff in error is that the first count in the indictment does not state the facts and particulars of a scheme to defraud, such as would constitute an offense under the statute. It is obvious that, unless a very general description of the offense in the language of the statute is permissible, this objection is well taken, provided the letter itself, which is set out in the indictment, does not disclose the necessary facts and particulars of a scheme to defraud, against which the statute is directed. In Stokes v. U. S., 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667, the court had under consideration an indictment for a conspiracy to commit the offense described in section 5480, and in reference to the facts necessary to be charged in such indictment Mr. Justice Brown, speaking for the court, said:

"We agree with the defendant that three matters of fact must be charged in the indictment and established by the evidence: (1) That the persons charged must have devised a scheme or artifice to defraud; (2) that they must have intended to effect this scheme by opening or intending to open correspondence with some other person through the post-office establishment, or by inciting such other person to open communication with them; (3) and that in carrying out such scheme such person must have either deposited a letter or packet in the post office, or taken or received one therefrom."

In that case the indictment, after charging these necessary matters of fact in general terms, continued as follows:

"The scheme and artifice to defraud as aforesaid was to be carried out by each of said defendants representing himself to be engaged as a dealer in various kinds of merchandise and goods, and to have an office, and to use in correspondence sheets of paper with his pretended business printed thereon; and the said defendants were mutually to represent each other to the said persons, firms, and companies, and others unknown to the grand jurors, intended to be defrauded as aforesaid, as financially responsible, and entitled to receive various kinds of merchandise and goods on credit; and the said

scheme and artifice to defraud as aforesaid was to be further effected by ordering merchandise and goods from the persons, firms, and companies, as aforesaid, and from other persons, firms, and companies to the grand jurors unknown, having no intention then and there to pay for such merchandise and goods so ordered as aforesaid, but to convert the said goods and merchandise to the use of each and of each other."

And the court, in reference to this specific statement of the scheme, said:

"We think this states with sufficient clearness the first requisite of an indictment, under section 5480, of a scheme or artifice to defraud."

In the previous case of U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516, the indictment was under Rev. St. § 5480, and described the offense in the general language of the statute quite as fully as it is described in the indictment under consideration, the letter having been set forth in full in that case as in this. It was held by the court that the description of the offense must be accompanied by a statement of all the particulars essential to constitute the crime and acquaint the accused with what he must meet on the trial. "The averment here," said Mr. Justice Field, "is that the defendant, 'having devised a scheme to defraud divers other persons to the jurors unknown,' intended to effect the same by inciting such other persons to communicate with him through the post office, and receive a letter on the subject. Assuming that this averment of 'having devised' the scheme may be taken as sufficiently direct and positive, the absence of all particulars of the alleged scheme renders the count as defective as would be an indictment for larceny without stating the property stolen, or its owner or party from whose possession it was taken."

The doctrine of U. S. v. Hess was reaffirmed in Evans v. U. S., 153 U. S. 587, 14 Sup. Ct. 936, 38 L. Ed. 831, in which the existing doctrine on this subject was restated by Mr. Justice Brown, speaking for the court, in the following language:

"A rule of criminal pleading, which at one time obtained in some of the circuits, and perhaps received a qualified sanction from this court in U. S. v. Mills, 7 Pet. 138, 8 L. Ed. 636, that an indictment for a statutory misdemeanor is sufficient if the offense be charged in the words of the statute, must, under more recent decisions, be limited to cases where the words of the statute themselves, as was said by this court in U. S. v. Carll, 105 U. S. 611, 612, 26 L. Ed. 1135, 'fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' The crime must be charged with precision and certainty, and every ingredient of which it is composed must be accurately and clearly alleged. U. S. v. Cook, 17 Wall. 168, 174, 21 L. Ed. 538; U. S. v. Cruikshank, 92 U. S. 542, 558, 23 L. Ed. 588. The fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent.' U. S. v. Carll, 105 U. S. 611, 26 L. Ed. 1135. Even in the cases of misdemeanors the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged; not only that the former may know what he is called upon to meet, but that, upon a plea of former acquittal or conviction, the record may show with accuracy the exact offense to which the plea relates. U. S. v. Simmons, 96 U. S. 360, 24 L. Ed. 819; U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Pettibone v.

U. S., 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419; In re Greene (C. C.) 52 Fed. 104."

A scheme to defraud, which in its facts and details would constitute the offense described in the statute, will appear by reference to the charges of the indictment in Stokes v. U. S., already referred to.

In Durland v. U. S., 161 U. S. 307, 16 Sup. Ct. 508, 40 L. Ed. 709, the scheme charged was that the defendant sought to obtain from persons large sums of money by representing that the Provident Bond & Investment Company would, upon the payment of a certain sum of money, issue to such persons a bond in the words and manner specifically set out in the indictment; and further charging that the defendant represented that said bonds would mature in accordance with certain paragraphs in the bond; and that the redemption value of the bonds when called, and the money payable to the holders of such bonds, would be a specified sum; whereas, in truth, the defendant, being the president of the Provident Bond & Investment Company, did not intend that the bonds would mature as represented, and did not intend that the redemption value of the bonds when called would be the sums represented, and that he intended by these false representations to obtain money for his own use from said persons.

In U. S. v. Bernard (C. C.) 84 Fed. 634, the scheme described was an endeavor by the defendants to induce persons to send money to defendant for investment in a business enterprise by certain specified false representations and allurements, with the real intention of converting the money to the defendant's own use; and the court in that case held that it was necessary, under the statute, in a count upon a scheme to defraud by means of false representation, to aver clearly and definitely the making of some specific representation, and the falsity of such representation.

In Culp v. U. S., 27 C. C. A. 294, 82 Fed. 990, the scheme was to defraud persons to whom letters were addressed through the mails by inducing such persons to sell and ship to the defendant certain articles of merchandise, for which he agreed to pay the shipper, whereas, in truth and in fact, he did not intend to pay for the articles, but intended fraudulently to appropriate them and convert them to his own use, without paying therefor.

In U. S. v. Loring (D. C.) 91 Fed. 881, the indictment charged the defendants with devising a scheme to defraud by pretending to have established a fund, which was designated as "Fund W," to be used for purposes of speculation, and soliciting persons to intrust them with money for investment in such fund, but for the real purpose, as was averred, of converting such money to their own use in fraud of those sending it; and that in pursuance of this scheme the defendants placed letters and packets in the post office, and received the like letters and packets therefrom.

These cases, without reference to others, sufficiently illustrate what would constitute a scheme to defraud, and the particularity with which the scheme must be described to satisfy the first of the three matters of fact necessary to be charged in the indictment,

as pointed out in Stokes v. U. S., supra. We may remark here that the question with which we are dealing is whether the indictment under consideration sufficiently charges the first element or matter of fact, namely, that the defendant devised a scheme to defraud. We also observe that the scheme described in the indictment was one to defraud the postmaster at Albany, Or., T. J. Stites, and no one else, and the case involves no inquiry whether others might have been deceived or defrauded, nor whether, in what was done by the defendant, some other offense was committed. The sole question, as we have observed, is whether a scheme to defraud is charged with such particularity in matters of fact and detail as constitutes a valid indictment under the statute; and we are of opinion that this question must be answered in the negative. There is no charge that the defendant did not intend actually to comply with the proposition contained in his letter by sending counterfeit money to the postmaster at Albany, Or., at the rate proposed. The first count in the indictment charges no such circumstances in the situation of Stites, or in the relation between him and the defendant, as to suggest that he may have been misled or deceived in any respect, provided the defendant complied with his proposition to send him spurious money in exchange for good money at the rate proposed. Indeed, the letter, on its face, is plainly a direct, undisguised proposition to sell counterfeit money, quite unskillful in form compared with the schemes which usually come to light in the adjudged cases. It is plainly evident from the course pursued in relation to the letter by the postmaster at Albany, Or., that he was left in no doubt or difficulty whatever as to the meaning and object of the proposition contained in the defendant's letter. If there was any misrepresentation, direct or indirect, or other facts and circumstances, which would constitute a scheme devised by the defendant to defraud Stites, the particulars in this respect are not given in this indictment. There is no averment to the effect that the defendant was not engaged in making counterfeit money, and in every way prepared to comply with his proposition if accepted. In what method and by what scheme was Stites to be deceived or defrauded, looking alone to the facts disclosed in this indictment? The effort to find an answer to this inquiry in any facts charged in the first count of this indictment will disclose at once its weak point. Or, again, putting the transaction in a past aspect, if Stites had concluded to accept the proposition, and use the spurious money offered, and had sent money to the defendant, and received counterfeit money in return therefor at the agreed rate of exchange, in what respect would Stites have been defrauded or misled? In this last aspect of the case both the defendant and Stites would have committed an offense, but Stites would not have been defrauded or deceived. The proposition contained in the letter was entirely devoid of artfulness, and could not have been misunderstood in the ordinary case; and, as we have said, no exceptional circumstance or fact is alleged in the indictment. The case of Durland v. U. S., 161 U. S. 307, 16 Sup. Ct. 508, 40 L. Ed. 709, relied on for defendant in error, is not in

point. On the contrary, as will appear from what we have already said of the scheme to defraud in that case, it will be seen that the indictment fully and clearly charged the. particulars of the scheme, and set forth distinctly the methods by which it was to be executed, and the false representations which were to be made in respect to the bonds proposed to be issued, with a further representation as to the redemption value of those bonds when called, and the sums of money which would then become due and payable. It was adjudged in this case that the statute included every scheme designed to defraud another by misrepresentations, suggestions, and promises as to the future as well as the past; and, further, that the omission in the indictment of the names of the parties intended to be defrauded was satisfied by the allegation, if true, that the names and addresses of such persons were to the jury unknown. The precise point here presented and now involved was not considered or decided in that case. The judgment is accordingly reversed, and the case remanded, with a direction to sustain the motion in arrest of judgment and discharge the defendant.