# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

## MILBY v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1903.)

### No. 1,046.

1. CRIMINAL LAW—FRAUDULENT USE OF MAILS—STATUTES—CONSTRUCTION.
   Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], provided that if any person, having devised any scheme or artifice to defraud, to be effected by correspondence with any persons by means of the post office of the United States, should, for the purpose of executing such scheme, place any letter in any post office of the United States, he should, on conviction, be punished, etc. By Act March 2, 1889 [page 3696], section 5480 was amended so as to read that if any person, having devised a scheme to defraud or to dispose of any counterfeit money, etc., to be effected by a correspondence through the mails, should place any letter in the post office, etc., he should be punished. *Held*, that the amendment was not intended to restrict the statute to schemes to defraud by the intended sale of counterfeit money, but was enacted to include such schemes within the prohibition of section 5480.

2. SAME—INDICTMENT.
   Where an indictment charged the use of the mails for the purpose of defrauding others unknown, by inducing the recipient of the letter deposited to place counterfeit money in circulation to such others, it contained a sufficient allegation of an intention to defraud, though the recipient of the letter could not have been defrauded.

3. SAME—CONVICTION ON SEVERAL COUNTS.
   Where a conviction is based on several counts in an indictment, it will not be reversed, if any of the counts are sufficient.

4. SAME—INDICTMENT.
   A count in an indictment, charging defendant with making use of the post office establishment in aid of a fraudulent scheme to sell counterfeit money, and that he did not in fact have or intend to sell any counterfeit money, and that when the letters of purchasers were returned to him he intended to convert the money therein sent and delivered through the postoffice to his own use, sufficiently charged a scheme to defraud, prohibited by Rev. St. § 5480, as amended by Act March 2, 1889 [U. S. Comp. St. 1901, p. 3696].

---

¶ 1. Matter relating to frauds and counterfeiting as nonmailable, see note to Timmons v. U. S., 30 C. C. A. 86.

¶ 3. See Indictment and Information, vol. 27, Cent. Dig. § 651.

120 F.—1

**5. SAME—TRIAL—INSTRUCTIONS—HARMLESS ERROR.**

Where, in a prosecution for using the mails with intent to defraud, the letter containing the scheme had been before the circuit court of appeals on a previous indictment, and a perusal of the letter clearly showed it to be a proposition to sell counterfeit money, an erroneous statement by the court, in a charge, that the letter had been adjudicated by the court in the former case as a proposition to sell counterfeit money, was without prejudice.

**6. SAME—EVIDENCE.**

In a prosecution for using the mails with intent to defraud by means of a letter offering to sell counterfeit money, evidence of the mailing of the letter, in which an answer was asked to be addressed to a person whose name was formed from the maiden name of defendant's wife, and that letters thus addressed were opened by defendant, and money taken therefrom and converted to his own use, was sufficient to justify submission of the case to the jury.

In Error to the District Court of the United States for the Western District of Kentucky.

W. M. Smith, for plaintiff in error.

R. D. Hill, U. S. Atty.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. In a former case against the same defendant this court had occasion to consider the offense charged in the alleged fraudulent use of the mails of the United States in sending the letter set out in the present indictment. Milby v. U. S. 48 C. C. A. 574, 109 Fed. 638. In that case the only question for determination was as to the validity of the indictment. The letter which was the basis of the scheme for the fraudulent use of the mails is set forth in full in the statement of the case preceding the opinion of Judge Clark. It is a proposition to sell counterfeit money. It is written on a fac simile of a Confederate States note, which may afford plausibility to the defendant's claim that it had reference to Confederate money. The terms of the letter are such that it admits of but one interpretation. The defect in the former indictment was that there was no allegation of intent to defraud the persons directly dealt with or others who might obtain the counterfeit money. In that case the letter set out contained simply a proposal to send counterfeit money, without averring that it would not be sent as proposed, or alleging any intent to defraud others. It was held that no scheme to defraud within the meaning of the statute was described. After the decision in that case, a new indictment was found against Milby in the court below. Upon trial he was convicted and sentenced. This case is before us to review alleged errors in the proceedings.

The indictment contains ten counts, charging the fraudulent use of the mails of the United States in depositing in the post office the letter before referred to. The case was submitted to the jury upon six counts. It is claimed by the plaintiff in error that none of these counts describes an offense under the statute. The first count, after charging the scheme to defraud by means of the letter and the use of the post office, expressly charges the intention to defraud divers

persons unknown by enabling, causing, and inducing the postmaster to whom the letter was sent to put the counterfeit money in circulation among said persons as good money. The second count undertakes to bring the offense within the second section of the act of March 2, 1889 (25 Stat. 873; 3 U. S. Comp. St. 1901, p. 3698), making it unlawful to use or assume or request to be addressed by a false or fictitious name in carrying out the scheme to defraud, and contains allegations apt for the purpose. The third count, with the other essential averments, charges the defendant with making use of the post office establishment in aid of the fraudulent scheme described, to sell counterfeit money, when he did not in fact have or intend to sell any counterfeit money, and that when the letters came to the post office at Milby, of which the defendant was postmaster, in execution of the scheme to defraud, the defendant intended to take possession of and convert to his own use the sums of money thus sent and delivered through the post office. The fourth count, after essential allegations as to the fraudulent scheme set out in the third count, charges the use of a fictitious name within the purview of the act referred to. The fifth count is like the third count, with the additional averment that Milby intended to sell, instead of counterfeit money, Confederate money. The sixth count charges the use of a fictitious name in carrying out the scheme in the fifth count. Milby was convicted by a general verdict on all of the counts and received a single sentence, within the terms of the statute laid down for a single offense.

We have so recently had occasion to consider the extent and scope of section 5480 of the Revised Statutes, as amended March 2, 1889 [U. S. Comp. St. 1901, p. 3696], that an extended consideration of its construction and purpose is not now necessary. Milby v. U. S., 48 C. C. A. 574, 109 Fed. 638; Horman v. U. S. (C. C. A.) 116 Fed. 350. As we said in the Horman Case, the gist of the offense is the criminal use of the mails of the United States. It is the purpose of this statute to prevent their use in aid of schemes having in view the defrauding of others of their money or property. The prime object of the statute is to prevent the post office from being perverted to the aid of fraudulent schemes. The indictment in the present case has remedied the defects pointed out in the former case. There is here a distinct allegation of the intent to defraud, within the meaning of the law in question. It is now objected that the present indictment charges a scheme to defraud by selling counterfeit money, whereas the statute was amended by act of March 2, 1889, making it an offense to use the postal facilities in aid of a scheme to sell counterfeit money. In its original form the statute was aimed at schemes to defraud, to be effected through the medium of the post office establishment. As amended, it is specifically enlarged, so as to include other schemes, as to the selling of counterfeit money, etc. The statute in its original form is contained in the following section, with the amendments in italics:

"If any person having devised or intending to devise any scheme or artifice to defraud *or to sell, dispose of, loan, exchange, alter, give away, distribute, supply or furnish or procure for unlawful use, any counterfeit or spurious*

*coin, bank notes, paper money or any obligation, or security of the United States or of any state, territory, municipality, company, corporation, or person, or anything represented to be, or intimated or held out to be, such counterfeit, or spurious articles, or any scheme or artifice to obtain money by or through correspondence by what is commonly called the 'sawdust swindle,' or 'counterfeit money fraud,' or by dealing or pretending to deal in what is commonly called 'green articles,' 'green coin,' 'bills,' 'paper goods,' 'spurious treasury notes,' 'United States goods,' 'green cigars,' or any other names or terms intended to be understood as relating to such counterfeit or spurious articles,* to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside the United States, by means of the post-office establishment of the United States, or by inciting such other person, *or any person,* to open communication with the person so devising or intending, shall in and for executing such scheme or artifice, or attempting so to do, place *or cause to be placed* any letter or packet, *writing, circular, pamphlet or advertisement,* in any post-office, *branch post-office, or street or hotel letter-box* of the United States, *to be sent or delivered by the said post-office establishment,* or *shall* take or receive any *such* therefrom, such person so misusing the post-office establishment shall, upon conviction, be punished by a fine of not more than five hundred dollars, or by imprisonment for not more than eighteen months, or by both such punishments, *at the discretion of the court.* The indictment, information or complaint may severally charge offenses to the number of three when committed in the same six months; but the court thereupon shall give a single sentence, and shall proportion the punishment especially to the degree in which the abuse of the post-office establishment enters as an instrument into such fraudulent scheme and device." 3 U. S. Comp. St. 1901, p. 3696.

We cannot agree with counsel for the plaintiff in error that this amendment was intended to curtail the operation of the statute as to the circulation of counterfeit money by use of the mail to the terms of the amendment. The original statute was not repealed. It was still an offense to devise a scheme or artifice to defraud, to be effected through the medium of the post office establishment, whether the subject-matter was counterfeit money or something else. It is true that a scheme to sell counterfeit money may be an offense under the amendment by its specific terms without proof of a scheme to defraud. The effect of the amendment is to extend the operation of the statute, and not to diminish the force of its original terms not in conflict with the amendment. Culp v. U. S., 27 C. C. A. 294, 82 Fed. 990; U. S. v. Jones (C. C.) 10 Fed. 469. It is true, as was held in Streep v. U. S., 160 U. S. 128, 16 Sup. Ct. 244, 40 L. Ed. 365, that the amendment applies to any person who devises a scheme to sell counterfeit money, the scheme to be effected by means of the mails; but this does not prevent punishment within the original terms of the statute of using the mail in aid of a scheme to defraud, the subject-matter of which is the disposition of counterfeit money.

It is further argued that the first count, which charges an intention to defraud persons unknown by subsequent circulation of the counterfeit money after its receipt by the persons to whom it was originally sent, is insufficient. It is urged that, as the person ordering counterfeit money would know what he was to get, he could not be defrauded. We think, however, that the allegation of the indictment as to defrauding others by the subsequent circulation of the counterfeit money brings it within the statute. It must always be borne in mind that the use of the mails in aid of schemes of spoliation is the thing sought to be prevented and punished. The

allegation of the indictment was distinct that there was an intention to defraud those whom it was intended should obtain the counterfeit money from the postmasters to whom it was sent. Such allegation, if true, was held to be sufficient in Durland v. U. S., 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709, and U. S. v. Jones (C. C.) 10 Fed. 469. It is to be remembered in this connection that the conviction of Milby was general, upon all the counts submitted; and it is settled law in the federal courts that, if any of the counts is good, the case will not be reversed in error, or a motion in arrest of judgment sustained, if the conviction can be sustained on any one of the counts. Babcock v. U. S. (C. C.) 34 Fed. 874; U. S. v. Jenson (D. C.) 15 Fed. 138; U. S. v. Simmons, 96 U. S. 360, 24 L. Ed. 819; Bish. Cr. Proc. 1015. One good count will support a conviction, when properly sustained, as well as more. Even if the contention of the plaintiff in error is sound, that where the subject-matter of the offense is the selling of counterfeit money, as distinguished from a scheme to defraud, it alone can be charged under the amended section, the first count of the indictment contains allegations sufficient to bring the charge within the meaning of the amended section. The indictment would not be invalidated because of the additional averment that this sale of counterfeit money was in aid of a scheme to defraud, as it contains all the essential elements required in the amended section as to a scheme to sell counterfeit money. As to the scheme to defraud, when it was charged in the third count of the indictment that the purpose was to offer for sale counterfeit money in the letter as set forth, with the design, when the money was received, not to send any counterfeit money in return, but to convert the money thus received to the use of the defendant, a scheme to defraud of a marked character is described. We think the indictment was sufficient, and that there can be no reversal on the grounds urged.

It is strongly argued that the court below erred in saying to the jury that the so-called "keep still" letter had been construed by this court in the former case (Milby v. U. S., 48 C. C. A. 574, 109 Fed. 638) as a proposition to sell counterfeit money. There are expressions in the charge of the court informing the jury that the meaning of this letter had been adjudicated in the case referred to, and was no longer an open question; that it was held to be no more or less than a proposition to sell counterfeit money. While it is not technically accurate to say of the decision in the Milby Case that it was in any true sense res judicata of the meaning of the letter, as the case was decided upon other grounds, we cannot perceive that the plaintiff in error sustained injury by the instruction given. A perusal of the letter shows that it was clearly a proposition to sell counterfeit money, and no harm came from telling the jury that the court had so held. Plaintiff in error testified that it was not his purpose to sell counterfeit money, but Confederate money. It may be that this was a cunning reservation devised on his part; but the terms of the letter are clear, so that one reading it might understand counterfeit money would be furnished to persons who sent money in answer to this appeal.

It is argued that there was not sufficient testimony to warrant the submission of the case to the jury. It is hardly necessary to state that this court will not review the weight of the evidence. The only question we can consider on this branch of the case is whether there was sufficient testimony to warrant the submission of the case to the jury. A perusal of the record satisfies us that there was ample testimony for this purpose. The testimony as to the mailing of the letter was distinct and clear. The answer was asked to be addressed to "M. J. Hawks," a person other than the sender of the letter, the plaintiff in error,—a name which he seems to have obtained from the maiden name of his wife. The record contains testimony tending to establish that letters thus addressed were opened by the plaintiff in error, and the money taken therefrom converted to his own use.

Upon the whole record, we find no ground for reversal, and the judgment of the court below will be affirmed.