### SPEAR v. UNITED STATES.

### PORTER v. SAME.

(Circuit Court of Appeals, Eighth Circuit. September Term, 1915. Rehearing Denied January 24, 1916.)

Nos. 4385, 4386.

1. POST OFFICE ⬥48—CRIMINAL OFFENSES—FRAUDULENT USE OF MAILS—INDICTMENT.

An indictment charged that defendants and their associates, having devised a scheme to defraud, for the purpose of executing it, caused a letter to be deposited in a post office. It described the scheme as involving the use of a pretended pool room, in which the victims were induced to make wagers on races, and having put up checks, instead of cash, were required to leave them for collection as an assurance of good faith, though announced as winners of the wagers. The indictment did not, as part of the description of the scheme to defraud, directly allege an intent to convert the proceeds of the checks to defendants' own use, but instead charged that in carrying out such scheme in manner and form as contemplated by them in devising it they received a check from one of their victims, and for the purpose of having it presented and collected for their use and benefit caused a bank to forward it for collection for the account of one of the defendants. Held, that while a general averment that defendants devised a scheme to defraud is not of itself sufficient, without descriptive details showing the character of the scheme, and that it was reasonably calculated to effect the wrongful design, and while the details in descriptive form in the indictment fell short, the direct averment of what defendants and their associates did and intended were fairly ascribable to and explanatory of the scheme to defraud, and the scheme was sufficiently charged and described.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. ⬥48.]

2. POST OFFICE ⬥35—CRIMINAL OFFENSES—FRAUDULENT USE OF MAILS—ELEMENTS.

Criminal Code (Act March 4, 1909, c. 321) § 215, 35 Stat. 1130 (Comp. St. 1913, § 10385), provides that whoever, having devised any scheme to defraud, shall for the purpose of executing it, or attempting so to do, place or cause to be placed any letter, etc., in any post office, shall be punished as therein provided. Defendants, having obtained a check from a victim of their scheme to defraud, caused a bank to forward it by mail for collection for them. Held, that the fact that the bank which deposited the letter in the mail was an innocent agency and ignorant of the scheme to defraud did not defeat defendant's responsibility.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. ⬥35.]

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CRIMINAL LAW ⬅789—INSTRUCTIONS—REASONABLE DOUBT.

On a trial for using the mails for the purpose of executing or attempting to execute a scheme to defraud, the court charged that it was not necessary for the jury to be satisfied beyond a reasonable doubt of the proof of every material allegation in the indictment, but that if, taking all the evidence together upon the whole question, they were satisfied beyond a reasonable doubt that defendant was guilty, their verdict should be guilty. *Held*, that this instruction was misleading, as tending to induce the jury, if impressed by the evil character of some part of the transaction, to overlook a lack of proof of a vital factor of the offense and find guilt in a general sense, since while each averment of descriptive detail, or each evidentiary fact or circumstance, need not be proved beyond a reasonable doubt, the essential, constituent elements of the offense, such as the contriving of a scheme to defraud and the use of the mails, must be so proved.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1846–1849, 1851, 1880, 1904–1922, 1960, 1967; Dec. Dig. ⬅789.]

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Ed Spear and Jack Porter were convicted of offenses, and they bring error. Reversed and remanded.

Lewis Rhoton, of Little Rock, Ark., John M. Goodwin, of St. Louis, Mo., and George W. Murphy, of Little Rock, Ark. (H. H. Myers and E. L. McHaney, both of Little Rock, Ark., and McShane & Goodwin, of St. Louis, Mo., on the briefs), for plaintiff in error Spear.

Lewis Rhoton, X. O. Pindall, and George W. Murphy, all of Little Rock, Ark. (H. H. Myers, of Little Rock, Ark., on the brief), for plaintiff in error Porter.

W. H. Martin, U. S. Atty., of Hot Springs, Ark. (W. H. Rector, Asst. U. S. Atty., of Little Rock, Ark., on the brief), for the United States.

Before HOOK, Circuit Judge, and ELLIOTT and YOUMANS, District Judges.

HOOK, Circuit Judge. Spear and Porter were indicted in five counts, the first four of which charged fraudulent use of the mails, and the last a conspiracy to commit the offenses set forth in the others, in violation of sections 215 and 37 of the Penal Code (Comp. St. 1913, §§ 10385, 10201). There were convictions and sentences on all the counts, except that Porter was acquitted on the first. They obtained these writs of error.

[1] At the threshold of the cases is the question of the sufficiency of the counts for fraudulent use of the mails. If they fall, that for conspiracy depending on them falls also. In respect of this question the first count is typical of the others. It charged that defendants and their associates, having devised a scheme to defraud certain named persons and others of their money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing it, caused the letter set forth to be deposited in a certain post office of the United States for transmission and delivery. The scheme described was what is commonly called a confidence game,

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and involved the use of a pretended pool room at Hot Springs, Ark., upon the boards of which appeared to be inscribed the results of races at Juarez, Mexico, and other distant cities, a capper who pretended to and convinced the victims of his advanced knowledge of the results of the races and the sure success of the wagers he advised, and so forth. In this case the victims were announced as winners, but having put up checks, instead of cash, the worth of the checks was brought in question, and they were required to leave them to the test of collection as an assurance of good faith on their part. Up to this point the description of the scheme is full and complete. The defect in the count as claimed is that no averment follows that defendants or their associates intended to convert to their own use the proceeds of the checks intrusted to them. It is true that the count, instead of continuing the descriptive form of words, breaks off into recitals of what the parties actually did, with some connective references to the preconceived scheme. Thus it is charged that *"in carrying out the said scheme and artifice, and in said manner and form as contemplated,"* by defendants and their associates, *"in devising said scheme and artifice,"* they received a check or draft from one of their victims for $10,000 on a bank in New York City; *"and so having the said check or draft in their possession, * * * for the purpose of having said check or draft presented and collected for the use and benefit of"* themselves, they caused a certain local bank to forward it for collection *"for the account of"* defendant Spear.

It is contended that these averments are not a part of the description of a scheme to defraud, and that without them it does not appear there was any intention wrongfully to convert the check or draft or its proceeds, and therefore there could be no defrauding. Milby v. United States, 48 C. C. A. 574, 109 Fed. 638.

A general averment that defendants devised a scheme to defraud is by itself not sufficient, without descriptive details showing its character and that it was reasonably calculated to effect the wrongful design. Here the details in descriptive form fall short, but we think the direct averments of what defendants and their associates did and intended are fairly ascribable to and explanatory of the scheme to defraud charged in general language. The receipt of the victim's check, the intent that it should be presented and collected for their use and benefit, though it belonged to him, and the causing it to be forwarded for collection for the account of one of the defendants, all were by way of carrying out the scheme in the manner and form as contemplated when the scheme was devised. This conclusion is plainly to be drawn from the words of the indictment. Again, the character of the offenses charged in the first four counts is not conspiracy. In an indictment for conspiracy, the omission of an essential element of the offense cannot be cured by the statement of the acts done to effect it, though it may be looked at to ascertain the sense in which terms are used. Stearns v. United States, 82 C. C. A. 48, 152 Fed. 900. This is so, because the offense is the conspiracy alone, and overt acts are not a part of it, but simply a requirement to show it was not a mere evil conception of the mind, without move to accomplishment

See United States v. Britton, 108 U. S. 199, 204, 2 Sup. Ct. 531, 27 L. Ed. 698. As to most conspiracies the statutes require an overt act; but where none is required, as in a conspiracy to deprive a citizen of a right under the Constitution and laws of the United States (Rev. Stat. § 5508), it is held not necessary to aver one, and that when averments of that character are made they are referable to the conspiracy as describing or particularizing it. Smith v. United States, 85 C. C. A. 353, 157 Fed. 721. So in a case like this there should be at least the same freedom of construction. We think a scheme to defraud was sufficiently charged and described.

[2] The indictment discloses that the bank, which defendants and their associates caused to forward the check for collection and to deposit the letter of transmittal in the mails, was ignorant of the scheme to defraud. An argument was made on this. But responsibility cannot be avoided by the use of an innocent agency intentionally employed to reach and use the mails in effecting a scheme to defraud.

[3] In charging the jury the court said:.

"Another thing about the reasonable doubt: I want to say to you it is not necessary that you must be satisfied beyond a reasonable doubt of the truth of every material allegation in the indictment. It means this: That taking all the evidence together, upon the whole question, are you satisfied beyond a reasonable doubt that he is guilty? If you are, then your verdict should be guilty. If you are not, then your verdict should be not guilty."

We think the instruction is misleading. It tends to induce a jury, impressed by the evil character of some part of the transaction, to overlook a lack of proof of a vital factor of the offense, and to find guilt in a general sense. The material allegations in an indictment must comprise all the substantive elements of the offense charged, and manifestly the measure of proof required for each should not be less than upon the ultimate issue of guilt. We do not mean to imply that in a case like this each averment of descriptive detail must be so proved, or that each evidentiary fact or circumstance must be so believed; but the contriving of a scheme to defraud substantially as set forth must be shown beyond a reasonable doubt, and so of the use of the mails.

Counsel for the government endeavor to sustain the instruction by cases holding that the jury are to be governed by "the effect of the evidence as a whole and not of distinct parts"; that an accused has no right to single out each material fact, and to demand a verdict of not guilty if the jury has a reasonable doubt of its existence, but is only entitled to an instruction upon the consequence of a doubt of guilt on the whole evidence in the case; that an instruction on the rule of reasonable doubt should be applied to the general issue, or to all the evidence, and not to each and every fact in proof, nor "to each link in a chain of circumstances," nor "seriatim to each item of the evidence," nor "to any particular fact in the case," as distinguished from the whole of the evidence. When the language of such cases, and there are many of them, is rightly regarded, and perhaps in some instances restrained to the point for decision, it will be seen that they relate to evidence or evidentiary facts, as distinguished

from the structural elements of the offenses charged. The former are within the domain of proof. The latter are matters of substantive law, and, though in a large sense also facts, they are the essential, constituent, ultimate proposition, to the existence or nonexistence of which the evidence or proof is directed. They inhere in the definition of the offense and compose its vital ingredients, as distinguished from the evidence to establish or refute them.

There is generally such a relation between the definitive elements of a public offense, and mutual corroboration in the proofs of them, as to make it improper to single them out for isolated, detached consideration. But in the end, all things considered, the established measure of proof of an offense charged is also the measure of each essential, constituent element. Instructions like the one before us were condemned in State v. Ottley, 147 Iowa, 329, 126 N. W. 334, and State v. Kimes, 145 Iowa, 346, 124 N. W. 164. See, also, Hinshaw v. State, 147 Ind. 334, 47 N. E. 157.

The opinion of this court in Richards v. United States, 99 C. C. A. 401, 175 Fed. 911, is also relied on. It was said:

"By the first of these requests a declaration was sought that, to find a defendant guilty, not only must each juror separately be convinced of his guilt beyond a reasonable doubt, but he must also be convinced beyond a reasonable doubt of the existence of each fact necessary to be proved. This goes farther than the authorities relied on. [Cases cited.] We think the subdivision of the case and the essential elements of the offense into separate matter for the separate determination of each individual juror would have served to confuse, rather than assist in a just and lawful verdict. The unusual emphasis so given would have tended to destroy the interrelation between the important facts of the case and the probative value which comes from the concurrent existence of a number of them, each assisting in the proof of the other—in other words, the rationale of circumstantial evidence."

This is very far from supporting the instruction in question. The other questions discussed by counsel may not arise again.

The sentences are reversed, and the cause is remanded for a new trial.