**MACKETT v. UNITED STATES.**

**HANECY v. SAME.**

**Nos. 6160, 6161.**

Circuit Court of Appeals, Seventh Circuit.

May 21, 1937.

Rehearing Denied June 25, 1937.

Lyman G. Wheeler, of Milwaukee, Wis., for appellant Frank Mackett, Jr.

Charles E. Hammersley and Ira S. Lorenz, both of Milwaukee, Wis., for appellant William E. Hanecy.

B. J. Husting, U. S. Atty., and L. Hugo Keller, Asst. U. S. Atty. both of Milwaukee, Wis.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

Appellants and others were tried on a three-count indictment, the first two counts of which were predicated upon section 338, title 18, U.S.C.A., and the third count upon section 88 of the same title. The first count, after setting forth the scheme and artifice to defraud, alleges the defendants "did place and cause to be placed in the Post Office of the United States, at Milwaukee, Wisconsin, aforesaid, to be sent and delivered by the Post Office Establishment of the United States, according to the direction and address thereon, a letter enclosed in a postpaid envelope addressed to the First National Bank, at Ripon, Wisconsin, from the Marshall & Ilsley Bank of Milwaukee, Wisconsin, said letter being of the following tenor, to wit." Then follows a copy of the letter together with other exhibits concerned with the collection in question.

The second count differs from the first only in the description of the letter which it is charged the defendants mailed or caused to be mailed. The letter here described is one from the First National Bank of Ripon, Wis., to the Marshall & Ilsley Bank of Milwaukee, Wis., which it is alleged was placed in the post office at Ripon, Wis.

The third count in apt language charges appellants with a conspiracy to violate section 338, title 18, U.S.C.A., and charges as overt acts, in addition to the acts of mailing described in counts 1 and 2, nine other and distinct acts. Appellant Mackett was convicted on each of the three counts while appellant Hanecy was convicted upon the second and third counts and found "not guilty" as to count 1. Although appellants have prosecuted separate appeals, they were tried together and both appeals will be disposed of in one opinion.

Numerous assignment of errors are relied upon for reversal consisting chiefly of errors by the court in its refusal to direct a verdict, errors in the giving and refusal of instructions, insufficient evidence to prove appellants used, or caused to be used, the United States mail in the transmission of the letter set forth in the indictment, and the refusal of the trial court to permit the jury to be polled.

The facts briefly are: A man by the name of John M. Gray, known by appellants prior to the time of the transaction in question as Cox, and other persons associated with him, were engaged in a scheme to defraud persons by representing they were qualified to treat various diseases of the eye, and in doing so prescribed and sold "radium water" and "radium belts." The whole scheme, of course, was fraudulent, and they succeeded in extracting fabulous sums of money from their victims in all parts of the country. There is no question from the record but what the scheme charged was proven beyond any doubt. It is earnestly insisted, however, by appellants that there was not sufficient evidence to connect them with the scheme to defraud, and that they were the victims of circumstances or, at any rate, whatever acts were committed by them were without knowledge of the scheme to defraud as the same was being operated by Gray and his

464

associates. Because of the conclusion we have reached there is no occasion to go into a detailed discussion concerning this phase of the case. It is sufficient to state that after a careful review of the record we are convinced the trial court, except for the reason next discussed, was entirely justified in submitting the case to the jury.

■ The most serious error complained of is one which attacks the sufficiency of the evidence with reference to the use of the United States mail in the execution of the scheme as charged in counts one and two. That the use of the mail is the gist or corpus of the crime is so well established as to require no citation of authority, and must, of course, the same as other essential elements, be proven beyond a reasonable doubt. Appellant Hanecy placed the Voelker check for $2,500, described in the first count of the indictment, with the Marshall & Ilsley Bank of Milwaukee, Wis., for collection, and by so doing the bank became his agent and he became responsible for any use of the mail which the bank employed in making collection. Spear v. United States (C.C.A.) 228 F. 485. Likewise, all others who were engaged in the conspiracy or who were partners of Hanecy in the joint enterprise, including appellant Mackett, were responsible for the use of the mail by the bank. United States v. Bender et al. (C.C.A.) 60 F.(2d) 56. The real question, however, is whether the use of the mail by the bank is established by this record. The only testimony bearing upon the same, to which our attention has been called or which we are able to locate in the record, was given by the witnesses Schmidt and Kuether, the former employed in the collection department of the Milwaukee bank, the latter as cashier of the Ripon bank.

■ Schmidt was permitted to testify, over objection, that the exhibits described in count 1 of the indictment were forwarded in the mail to the First National Bank of Ripon, Wis. This testimony was merely the conclusion of the witness. Any doubt concerning the same was dispelled by cross-examination, where he admitted he had no such knowledge and couldn't even say whether the exhibits were placed in an envelope. He also testified with reference to the exhibits described in count 2 that he received the money from the Ripon bank through the mail. The exhibit described in this count is a draft, not mon-

ey. He afterwards admitted he did not receive the incoming mail from Ripon. The witness Kuether, over objection, gave like testimony with reference to the exhibits described in count one. Their testimony amounts to no more than an opinion upon an essential element of the case. There is not a scintilla of evidence that the exhibits described in either count were ever placed in envelopes, if so to whom the envelopes were addressed, that they were stamped or bore any mark of mailing, and if they were mailed, at what post office. While we are aware that such proof may be made by circumstantial evidence, yet the circumstances relied upon to prove a fact must be proved and not themselves presumed. United States v. Ross, 92 U.S. 281, 23 L. Ed. 707.

In Brady v. United States (C.C.A.) 24 F.(2d) 399, the sufficiency of the evidence on the element of mailing is discussed at length. On page 403 is set forth the testimony relied upon which makes a stronger case for the Government than we here find. The court, among other things, said: "There is no direct evidence that defendants wrote the letters or that they deposited them in the post office directed to Mergen with postage prepaid, or that they otherwise caused them to be delivered to Mergen through the mails. The envelopes in which the letters were mailed are not in the record and apparently were not introduced in evidence. * * * The fact that the defendants caused such letters to be delivered * * * must be inferred, if at all, from the fact that the letters purport to have been written either by McClintock or by Brady, that the letters are addressed to Mergen * * * and that Mergen testified he received such letters through the mail."

The court then discusses the matter of presumptions on the part of the jury and says: "From this presumption, the presumption would have to be raised that the defendant Brady caused them to be mailed, so addressed, and from the last presumption the presumption would have to be drawn that the post office establishment delivered them at Beloit, Kan., to Mergen. It is well settled that presumptions cannot be based on presumptions."

■ In United States v. Baker et al. (C.C.A.) 50 F.(2d) 122, on page 123, in discussing the same question the court said: "Since this letter went from New York to

Hartford, it is very likely that it went by mail, as that is a convenient and customary way to send letters from one city to the other. That is really all the 'proof' of mailing there is. If the guilt of an accused under the mail fraud statute requires no more proof of the mailing of a letter than proof that it was written in one city and received in another, the task of a federal prosecutor in such a case is much simpler than had hitherto been supposed, Freeman v. U. S., supra [(C.C.A.) 20 F.(2d) 748]; Underwood v. U. S. (C.C.A.) 267 F. 412, 418; and 18 U.S.C.A. § 338, would become by construction not a mail fraud but a letter fraud statute, lacking in the essential basis of federal jurisdiction which the use of the mail provides. To avoid such a perversion of the statute, in the guise of passing upon the weight of evidence, it is necessary to insist upon real proof, circumstantial or direct, that beyond a reasonable doubt, the mail was used."

█ This language is peculiarly appropriate to the instant case inasmuch as the Government stresses the fact that the Milwaukee bank is located in one city and the Ripon bank in another. We, therefore, come to the conclusion that the evidence is insufficient to prove the act of mailing as charged in the first and second counts of the indictment.

Appellants contend that the lack of proof of mailing, fatal to counts 1 and 2, is likewise fatal to count 3. We do not so understand the law. It is true in the latter count no use of the mail is charged as overt acts except those charged in counts 1 and 2, yet other overt acts are alleged. The question thus presented received consideration in Morris v. United States (C. C.A.) 7 F.(2d) 785. The indictment in that case contained nineteen counts, the first eighteen of which were based upon the mail fraud statute and the nineteenth count upon the conspiracy provision. The defendant was acquitted upon the eighteen counts and convicted upon the nineteenth count. It was claimed there, as here, that such conviction could not stand. On page 792 the court said: "It was essential, in order to convict under any one of the eighteen counts, that the evidence show the use of the United States mails. It was not essential to convict under the nineteenth count that any use of the United States mails be shown, other overt acts in furtherance of the conspiracy being shown. It was not essential to convict under any

one of the eighteen counts that an intent to use the mails as a part of a scheme to defraud be shown. To warrant conviction under the nineteenth count, the intent to use the mails must be proved. It is apparent, therefore, that certain facts essential to conviction on any one of the eighteen counts were unnecessary to convict on the nineteenth, and likewise the contrary as to essential facts for conviction under the nineteenth count."

█ This theory also finds support in Freeman v. United States, 244 F. 1, "an opinion of our own court written by Judge Alschuler, where, on page 19, discussing the same question, it is said: "Under section 215 [18 U.S.C.A. § 338] an actual use of the mails is essential to conviction. Under section 37 [18 U.S.C.A. § 88] the overt act to complete the offense may be any act. It may be mailing a letter or anything else." So in the instant case it does not necessarily follow that the conviction under count 3 could not stand because of insufficient evidence to support the charge of mailing under counts 1 and 2.

As the case is to be reversed on other grounds, there is no occasion to go into the various errors assigned concerning the giving and refusing of instructions by the court. We might say in passing that we fail to find in the charge of the court any statement to the effect that the indictment was no evidence of the facts charged. However, the court was not requested to give such instruction and it no doubt was overlooked.

The error assigned which we shall last discuss was the refusal of the court, though requested, to poll the jury. In Smith v. State, 51 Wis. 615, at page 620, 8 N.W. 410, 412, 37 Am.Rep. 845, the court said: "That a defendant, in either a civil or criminal action, has the right to poll the jury is well settled, and a refusal to permit him to do so is error, for which the verdict will be set aside. Webster v. McKinster, 1 Pin. 644; State v. Austin, 6 Wis. 205; Rothbauer v. State, 22 Wis. 468; Labar v. Koplin, 4 N.Y. 547."

In Encyclopedia of Pleading and Practice, vol. 22, p. 932, the rule is stated as follows: "The weight of authority is probably to the effect that in civil causes the court may, or may not, as it deems to be necessary or desirable, permit the jury to be polled on request of either party, while

in criminal cases the defendant may demand a poll as a matter of right."

In Encyclopedia of the United States Supreme Court Reports, vol. 11, p. 924, it is said: "That, generally, the right to poll a jury exists, may be conceded. Its object is to ascertain for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or induced to sign a verdict to which he does not fully assent."

In Alusa v. Lehigh Valley R. Co. (D.C.) 26 F.(2d) 950, the court said: "The right to the polling of a jury has not been questioned. This right may be exercised at any time before the verdict is recorded. Warner v. New York Central Railroad Co., ·52 N.Y. 437, 11 Am.Rep. 724, and cases cited. Under these cases, the right to poll exists, unless it has been expressly waived."

In District of Columbia v. Humphries, 11 App.D.C. 68, at page 73, 74 it is said: "The right to poll the . jury is regarded as an absolute right in either party, and the refusal of the trial court, upon request to have the jury polled, is such an error as will require the appellate court to reverse the ruling."

The case last cited was before the Supreme Court in Humphries v. District of Columbia, 174 U.S. 190, 19 S.Ct. 637, 43 L.Ed. 944. The question presented was whether the failure to poll a jury nullifies its verdict so that a judgment entered thereon was void, subject to attack in a collateral proceeding, or whether it was only error to be corrected on appeal. The court held that it was the latter and, on page 194 of 174 U.S., 19 S.Ct. 637, 638, 43 L.Ed. 944, said: "That, generally, the right to poll a jury exists, may be conceded. Its object is to ascertain for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or induced to sign a verdict to which he does not fully assent. It is not a matter which is vital, is frequently not required by litigants; and, while it is an undoubted right of either, it is not that which must be found in the proceedings in order to make a valid verdict."

We, therefore, are of the opinion that the right of a defendant to poll the jury in a criminal case is a substantial one and when denied is error which requires a reversal.

The judgments are reversed for a new trial.