## UNITED STATES v. POST.

(District Court, S. D. Florida. February 9, 1904.)

1. POST OFFICE—USE OF MAILS TO DEFRAUD—ELEMENTS OF OFFENSE.

In a prosecution for the use of the mails for the furtherance of a scheme intended to defraud, the government is bound to prove beyond a reasonable doubt a plan or contemplated series of actions for the purpose of defrauding another by deception, artifice, false promises, or pretenses; that a part of the plan must be the use of the mails for the purpose of effecting the same; and that the party charged deposited or caused to be deposited in the mails some letter or paper in the execution of such plan.

2. SAME—FRAUDULENT INTENT.

In a prosecution for the use of the mails with intent to defraud in the use of an alleged power of mental healing, defendant's fraudulent intent is a question of mental condition, not provable as an ordinary fact, but is to be found by the jury from the attendant and surrounding circumstances.

3. SAME—BURDEN OF PROOF OF POWER TO ACCOMPLISH WHAT WAS PROMISED.

Where, in a prosecution for the use of the mails with intent to defraud, in the exercise of an alleged power of mental healing, defendant claimed that she was able, by the mere emanations of her own mind, to impart such power to another residing at a great distance, and through a second person, not present, to a third person, also absent, without such third person's knowledge, such claim being contrary to well-settled and accepted natural laws, the burden was on the defendant to establish the existence of such power; but if it was found that defendant believed she could accomplish what was promised, or there was any doubt that she knew she could not, that doubt should be considered in defendant's favor, and a verdict of acquittal rendered.

4. SAME—WEIGHT OF EVIDENCE.

Where, in a prosecution for fraudulent use of the mails in furtherance of a scheme to defraud by mental healing, certain witnesses testified that they were treated for diseases and helped by defendant through emanations of her mind, while they were totally ignorant of defendant's acts and doings, such phenomena being contrary to nature and not explainable under any natural principle or known laws, this evidence might be rejected by the jury, though uncontradicted.

5. SAME—WITNESSES—PREJUDICE.

The relations, feelings, and prejudice toward accused or between her and the witnesses can only be considered by the jury when it appears that such feeling of animosity has been such as to influence their testimony.

6. SAME—EVIDENCE.

In a prosecution for using the mails in furtherance of a scheme to defraud, consisting of the practice of an alleged power of mental healing, evidence of one of defendant's employés in regard to the manner of conducting her business and as to the classes of cases in which treatment was undertaken and money received was admissible.

---

¶ 1. Matter in furtherance of fraud as nonmailable, see note to Timmons v. United States, 30 C. C. A. 86.

¶ 2. See Post Office, vol. 40, Cent. Dig. §§ 55, 85.

Henry T. Campbell, Asst. Atty. Gen., and Joseph N. Stripling, U. S. Dist. Atty.

Otis T. Green and Bisbee & Bedell, for defendant.

LOCKE, District Judge (charging jury). The law upon which the indictments in this case are based is, in substance, "If any person, having devised any scheme to defraud, to be effected by opening or intending to open correspondence through the United States mail, shall, for executing such scheme, deliver any letter, book, writing, circular, pamphlet, or advertisement in any post office of the United States, he shall upon conviction be punished." Under this law the defendant herein, Helen Wilmans Post, stands charged under four indictments. The first indictment (No. 141) alleges, in substance, that she had devised a scheme and artifice to defraud by holding out that she had discovered and perfected a method and process by which she could cure every form of disease and weakness and poverty; intending by such representations to induce persons to send her money for the purpose of receiving treatment by such method; fraudulently intending to convert the same to her own use without intending to cure them, or to bring financial success; and as a part of such scheme she did, in papers, etc., advertise and represent that she could and would administer such treatment; which scheme was to be effected by means of the post-office establishment; and that in the executing and conducting such scheme she mailed, or procured to be mailed, a letter on the 21st of March, 1900, to one Mrs. B. B. Ricker, at South Lake Wier, Fla. The second indictment (No. 160) in substance charges the same offense, except that it states that at and before the time of committing the offense she did not intend to administer any treatment for any disease or weakness by said method or process, and did not intend to cure any person; that such scheme was to be effected by means of the post-office department, and that in carrying out said scheme she mailed a certain letter to Mrs. C. S. Faulk, at Milton, Fla. The third indictment (No. 161) charges, in substance, the same offense, viz., the same artifice and scheme to defraud, and that the same was to be effected by advertising through the mails in various papers and pamphlets that she could treat and cure persons affected with disease for the sum of $3 per week or $10 per month; and when devising such scheme and artifice she did not intend to administer any treatment for any disease by said method, or any other method, and did not intend to cure any person who might apply to her, but intended to defraud such person of such sums of money as should be sent to her without rendering any service therefor; and in the carrying out of such scheme a certain letter was caused to be placed in the post office of the United States at Seabreeze. The three first indictments therefore charge, in substance, that the defendant had devised a scheme to defraud, which scheme consisted, as is fully set forth, of making false and fraudulent representations as to her ability and power to cure persons by a so-called "absent treatment," without intending to give such treatment, or to cure persons, as she had promised to do. The fourth indictment (No. 176) charges the same scheme, viz., in substance, that she did fraudulently assume and pretend to

practice absent treatment, by which means she would cure all diseases, old age, poverty, liquor habit, and all undesirable conditions, for a certain amount per month, through the instrumentality of some second person, though the fact of such alleged treatment through the second person was unknown to the third person (no matter at what distance from each other or from her), and that she could and would send the third person through the second person her vitalizing power and healing thoughts for the cure of all disease by the second person holding the third person receptive to and in close relation with her thoughts; that she did represent by letters and various publications and circulars caused to be published and circulated that she could and would cure all such persons; that she deposited such papers and publications, or caused the same to be done, in the mails of the United States for the furtherance of such fraudulent scheme, pretending that her healing thoughts could and would be transmitted through a second person to a third person, and cure him or her, which representations were false, and well known to her to be false, at the time of making them, and that she was not capable of performing them—by which fraudulent scheme she acquired and converted to her own use large sums of money; and that in the furtherance and execution of such scheme to defraud, at the time of committing such offense, she mailed and caused to be mailed numerous newspapers and advertisements, and sent through the post-office establishment divers and sundry letters, with the intent to induce sundry persons to open correspondence with her, and to fraudulently obtain money therefrom; and that it was well known and understood by the said defendant to be a deceit and fraud; and that after the engagement for such treatment sent through the mails of the post-office establishment the name of Helen Wilmans Post was not written by her, but was written by a typewriter, and by her employés, stenographers and clerks, it thereby being her intention to defraud persons sending her money of said money without giving or intending to give any equivalent therefor, and without being able to give or intending to give such treatment, or to cure patients and persons as she represented that she could and would do; and that in executing the said scheme she caused to be mailed in the post office at Seabreeze, Fla., a certain letter addressed to Mrs. C. S. Faulk, Milton, Fla.

There are three elements to each offense as charged: First. There must be a scheme, a plan, a contemplated series of actions for the purpose of defrauding some one; that is, with the purpose of wrongly obtaining money by deception or artifice, by false promises or pretenses. Secondly. A part of this plan must be to use the mails of the United States for the purpose of carrying it out. Thirdly. The party charged must have deposited, or caused to be deposited, in the mails, some letter or paper in the execution of this plan. Each of the elements must be proven beyond a reasonable doubt. Reversing the order of statement of these elements, and considering the last first, viz., the mailing of the letters, there is no conflict of evidence. The publication of the advertisements, circulars, and papers has been fully shown, and the only question remaining is whether there was a scheme to defraud. This depends upon your finding upon the intent of the

defendant at the time of her making use of the mail for the purpose of advertising. There is no question of the efficacy of mental healing, but only the fraudulent intent of the defendant in not intending to render any treatment as promised. The only question necessary for you to pass upon is whether you are satisfied by the evidence that the defendant, in devising the scheme, did not intend to render any so-called treatment, such as she had advertised to do. The question of criminal or fraudulent intent is a question of mental condition, and cannot be proven the same way as ordinary facts, but may be found from attendant and surrounding circumstances sufficient to satisfy the jury that the accused had or had not the intent charged. The testimony for the prosecution in this case has shown the defendant's usual manner of conducting her business—almost entirely by clerks—the handling of the mail, and the keeping up of the correspondence, and the character of the promises, and declarations of her ability to perform; and it is thereby claimed that she did not give any affirmative treatment, contending therefrom that she never intended to do so. The so-called treatment, as advertised by the defendant, consisted in sending out so called "healing thoughts" "drawing the thoughts of the patient to her without any effort of theirs," and "taking care of their condition," whatever it was, with a promise "to treat them with great power and faithfulness." This is the positive, direct, and affirmative treatment which the defendant promised and engaged to give. Does the testimony show whether or not, at the time of making such promises and sending out such circulars, she intended to give such treatment? The foundation of the contention of the government is that what was promised to be done could not have been intended, because the fulfillment was known to be impossible by the means proposed by the defendant, viz., the transfer of the power of her thought to the person of the patient with a curing influence sufficient to accomplish the changes in condition that were declared could be accomplished, and particularly in the cases of treating a third person unawares of such contemplated treatment through a second party.

The contention of the defendant is that what she had promised was to be performed by the discovery of a new law of mental healing, by which healing thoughts can be sent out for the purpose of cure.

There are well-settled and accepted natural laws, a recognition of which is justified by the long experience of men, the knowledge of everyday life, as well as by the studies and experiments of ages. Of these we may take cognizance—the laws of gravitation, cohesion, of optics, the phenomena of electricity, etc. But when one contends that he has made new discoveries in science or art, opposed to the general experience of man for ages, and directly in conflict with the generally accepted rules, and seeks to gain money or secure profit thereby, the burden of the proof of the truth of such discovery is upon the party making the claim, and the truth of such contention must be satisfactorily proved before it can be accepted. The contention of the defense is that the defendant can and could do everything that she promised to do; that she had the ability to send healing thoughts to any distance, and in any direction, not only to affect the mind of those desiring treatment so as to effect their physical cure, change the color of their hair, cure cancer,

consumption, and pneumonia, and kindred diseases, but also to affect the cure of other parties who have no knowledge of such treatment, and are neither desirous for nor informed of it. There is not involved in this case the question of the influence of the mind over the physical health of the same person, nor the beneficial effects of hopeful and cheerful thoughts, even though produced by natural suggestion through the senses by another. The contention of the defendant, through all of her published works, is that she can actually send, not by suggestions by letter, but by emanations from her own mind, such power as will, after passing through the mind of a second person, influence the physical condition of a third person; and it is also in testimony that such power is not claimed as pertaining particularly to the defendant, but that it can be taught to any class in a four-weeks course. I have no hesitation in saying to you that this power is not recognized as a natural law by the experience of mankind, and that she is attempting to establish a new and unrecognized law of nature, and therefore the burden rests upon her to satisfy you that she possessed such power, and could do what she promised and advertised to do. It is for you, therefore, to inquire whether you are satisfied that the contention of the defendant that she can send her thoughts out to indefinite distances, and so affect the bodies of others as to produce physical changes, as she advertised to do, is true.

What is the evidence of the defense to establish such a law of nature? The general idea and principle upon which justice is administered in courts is that testimony given under oath is to be accepted as true until contradicted; but there are certain exceptions to this rule. Where such testimony of itself is directly contrary and in opposition to the well-established laws of nature, accepted by all men from the experience and study of ages, such testimony may be properly ignored without contradiction. The court has permitted several parties to testify as to their relations with the defendant. Although they, in terms, testified that they had been treated by the defendant and cured, it at the same time appeared that these parties were at great distances—hundreds, and sometimes thousands, of miles—from the defendant, and totally ignorant of her acts and doings at the time they alleged the defendant treated them. Such testimony was so contrary to the well-established rules of evidence and natural laws that it could not be accepted as stated. They had no knowledge of the whereabouts, actions, doings, or thoughts of the defendant, but, on the contrary, everything shows that they were so situated that their testimony regarding any acts or doings of hers could only be admitted to have the force of stating that they had physical troubles, applied to and corresponded with the defendant, and recovered their health, and informed her of it. If any phenomena or pretended result of any new idea or new discovery in science which is contrary to nature as recognized can be explained and accounted for upon natural principles and known laws, rather than by those which are in opposition to such, the natural explanation should be accepted, and such phenomena or results rejected as evidence of the pretended discovery. Therefore if you should believe from the evidence that the cures or improvement of the patients so testified to might have resulted from the hopeful condition of their

own mind, although suggested by the letters from the clerks of the defendant, or from any natural limitation or course of the disease, and not from any thoughts emanating from the mind of the defendant, you are not bound to accept such evidence as sustaining the contention of the defendant. If you so find, and find that the testimony of the several witnesses who claimed that they had been improved or cured cannot be accepted to establish the existence of this law, it will be seen that this wonderful power which she claims in her testimony to possess has no support except in her own uncorroborated declarations. Are these sufficient to satisfy you that under the circumstances, and to the extent she claimed and promised, she could and would cure? In examining this question all natural laws and your own knowledge and experience can be considered. There is no test by any natural law of this power of sending health-giving thoughts. The natural and recognized scope of the mind is to generate and transmit, or perceive and recognize, thoughts of intelligence, of knowledge, judgment, will, and action. For the transmission of such thoughts there are certain tests, and it can be determined to a certainty whether such intelligence can be conveyed or transmitted. Experiments are constantly being tried by mental scientists to ascertain whether such intelligent power can be transmitted from mind to mind, but that such transmission can be made has not been accepted as a natural law, and the few cases which are claimed to have occurred are accepted with doubt, and considered extraordinary and unusual personal experiences, and not in conformity with any general law. If the defendant contended and testified that she had communicated to one in Europe an intelligent thought, a thought of knowledge or action, of what she knew or of what she was doing, would such testimony be accepted without corroborative evidence, or an examination and test by natural laws? How far, then, are you satisfied of the truth of her statements as to her transmitting healing thoughts, which statement can in no way be examined or tested by natural laws or legal evidence?

The three first indictments only charge that the defendant claimed that she could cure persons by direct treatment of themselves, and that she did not intend to treat them. In these indictments such intent is the very essence and substance of the charge. There is no question of the sufficiency or efficacy of mental healing, but only the intent of the defendant not to render any treatment as promised. Of this you must be satisfied beyond a reasonable doubt. If you find upon that point that she did not intend to give any such treatment, your verdict upon these three indictments will be "Guilty"; but, unless you are so satisfied, it will be "Not guilty."

The fourth indictment (No. 176) charges that the offense consisted more especially in promising to cure third persons without their knowledge, or without direct influence upon them, by treating through an intermediate person, and that she could not so cure them, and that she knew she could not, and that she did not intend to cure patients by such treatment. There are therefore two questions presented by this indictment upon which the findings of the jury must rest: First, her ability to cure as promised and advertised by such means; and, secondly, her knowledge and intent in regard to such cures. The in-

dictment charges that the defendant's pretensions to cure were false, and she knew them to be so, and that she received money without intending to give treatment or any equivalent therefor. The knowledge of the party at the time of making a promise or holding out an inducement for profit or gain is a good test of the intent of the party making it. No sane person of reasonable judgment can be considered as intending to do that which he at the time knows is and will be impossible for him to do. Therefore, if it is found that at the time the defendant promised as is charged, that she could and would cure as she said she would, she knew she could not so cure, her intelligence may be inquired into to determine whether or not she intended to give treatment or any other equivalent for what she had promised. And if you find and believe that what the defendant claimed she could do is so contrary to the laws of nature that it was impossible, and that the defendant has failed to satisfy you of the truth of the powers she claimed, and that, therefore, she could not do what she pretended she could, and she did not believe she could, but knew that she could not, you will, upon that indictment, return a verdict of guilty. If you find that she could, or honestly believed she could, do what she advertised and promised, or if there is a reasonable doubt in your mind as to her knowledge and intent, you will return a verdict of not guilty.

In examining the case you are the sole judges of the credibility of the witnesses; that is, you will determine just what of the testimony you will accept. You are to determine any conflict, and from what you consider the truth reach your verdict. The relations, feelings, and prejudices of witnesses toward the defendant, or between the defendant and the witnesses, can only be considered when it appears that such feeling of animosity has been such as to influence the testimony.

During the trial I was requested to strike out all the testimony of Dora Dayton in regard to the manner of conducting the business, and as to the classes of cases in which treatment was undertaken and money received. I must deny that motion. It was the personal knowledge of a party particularly cognizant of the manner of conducting the business, and as such was material and relevant, and you will consider it. You have the publications, promises, and advertised pretensions of the defendant's powers to cure under all the circumstances; numerous letters, with her indorsements as to what she could and would do; the testimony of money received; and the letters mailed as charged—all of which may be considered.

And, finally, I charge you that, after considering all the testimony and evidence, if upon the three first indictments (Nos. 141, 160, and 161) you find that the defendant at or about the time laid in the indictments had devised a scheme to defraud as charged, and that a part of that scheme was to use the United States mails for the purpose of inducing people to send her money, and that she so used the mails, and that she made false statements as to her powers to cure patients, and promises that she would treat them, and that at the time of devising such scheme she did not intend to give them the treatment she had promised, and that in the execution of such scheme she mailed,

or caused to be mailed, the letters charged in the indictment, you will find the defendant guilty. If there is a reasonable doubt in your minds upon any one of these points, you will find the defendant not guilty.

If, upon the fourth indictment (No. 176), you find that the defendant, at or about the time laid in the indictment, had devised a scheme to defraud as charged, and that a part of the scheme was to use the United States mails for the purpose of inducing people to send her money, and that she so used the mails, and that she made false statements in regard to her ability to cure one person through the mind of another person, and false promises that she would cure persons through some other person, and that it was impossible that she could so cure one person through another, and that at the time of making such promises she knew that she could not so cure them, and that in the execution of this scheme she mailed or caused to be deposited for mailing the certain envelope and letter charged in the indictment, you will find the defendant guilty. If you have a reasonable doubt upon any of these points, you will find the defendant not guilty. A reasonable doubt is a doubt derived from the evidence or lack of evidence in the case, such as would influence or control you in the important business and transactions of your own.