# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### POST v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. February 27, 1905.)

No. 1,352.

**1. POST OFFICE—USE OF MAILS TO DEFRAUD—ELEMENTS OF OFFENSE.**

Where, in an indictment for using the mails in furtherance of a scheme or artifice to defraud, the only charge of fraud or bad faith was that defendant advertised to practice mental healing, and received pay to treat patients "when she did not intend to administer any treatment," the mere averment that she was engaged in the business of mental healing does not state a scheme or artifice to defraud, within Rev. St. § 5480, as amended by Act March 2, 1889, c. 393, § 1, 25 Stat. 873 [U. S. Comp. St. 1901, p. 3697], but the gist of the offense as charged in such indictment is that she did not intend, when she so advertised and received money, to give the treatment for which she was paid, and such averment must be proved to warrant a conviction.

[Ed. Note.—Use of mails to defraud, see note to Timmons v. United States, 30 C. C. A. 86.]

**2. SAME—PRACTICE OF MENTAL HEALING—GOOD FAITH.**

Rev. St. § 5480, as amended by Act March 2, 1889, c. 393, § 1, 25 Stat. 873 [U. S. Comp. St. 1901, p. 3697], making it a criminal offense to use the mails in furtherance of a scheme or artifice to defraud, does not make any discrimination, with respect to the right to the use of the postal establishment of the United States by persons whose vocation is healing, between those who profess to cure by the use of mental science and those who use drugs; and, in a prosecution thereunder for such use of the mails, the question of the defendant's good faith is the cardinal question. If she practiced in good faith, without the intention to defraud, she is not guilty, although in fact the theory and practice followed were worthless; but if, without belief in her practice, and with knowledge that her representations regarding it were false, she made them to defraud, the fact that mental healing is a lawful vocation does not prevent conviction.

**3. SAME—BURDEN OF PROOF.**

The burden of proof in a criminal case is never upon the accused to prove innocence, or to disprove evidence offered to establish crime. In a prosecution for the use of the mails to carry out a scheme to defraud in the practice of mental healing, it being charged in the indictment that the defendant's promises to heal were impossible of performance, and evidence having been received on both sides of that issue, it was error to instruct the jury that the burden rested on the defendant to prove to their satisfaction that she possessed such power.

135 F.—1

4. CRIMINAL LAW—INSTRUCTIONS—WEIGHT AND CREDIBILITY OF TESTIMONY.
    While the judge of a federal court may express his opinion in a charge
    as to the weight or effect of evidence or the credibility of witnesses,
    he is not warranted in directing a jury that they should ignore evidence
    offered by a defendant as to the possession by her of certain powers
    of mental healing because it was contrary to well-established laws of
    nature. If the evidence is admissible, its credibility and weight are
    matters for the jury to determine.

In Error to the District Court of the United States for the Southern District of Florida.

For opinion below, see 128 Fed. 950.

H. Bisbee, Geo. C. Bedell, and O. T. Green, for plaintiff in error.
J. N. Stripling, U. S. Atty., and W. W. Howe, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge.  Four indictments were found against the plaintiff in error, who will hereafter be called the defendant, charging her with a violation of section 5480 of the Revised Statutes of the United States, as amended by the act of March 2, 1889, c. 393, § 1, 25 Stat. 873 [U. S. Comp. St. 1901, p. 3697]. The material parts of the statute are as follows:

"If any person, having devised or intended to devise any scheme or artifice to defraud * * * to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside the United States, by means of the postoffice establishment of the United States, or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice, or attempting to do so, place or caused to be placed any letter * * * in any postoffice * * * of the United States, to be sent or delivered by the said postoffice establishment, * * * such person so misusing the postoffice establishment shall, upon conviction, be punishable by a fine of not more than $500 and by imprisonment for not more than 18 months, or by both," etc.

The indictments were consolidated under Rev. St. § 1024 [U. S. Comp. St. 1901, p. 720], and tried on the plea of not guilty, as one case. The defendant was convicted, and sentenced to imprisonment in the penitentiary for one year and a day. The charge of the trial judge is reported in full in United States v. Post (D. C.) 128 Fed. 950.

It is not desirable to make a full statement of the evidence (the record contains more than 500 pages), but it is necessary to make a sufficient statement of it to make clear the questions to be decided.

When about 22 years of age the defendant was graduated by a college in Illinois. From that time for about 20 years she was occupied in teaching and literary pursuits, and became well-known as a writer. When about 30 years old she became a student of Christian and mental science. She studied the subject for many years. After investigation she rejected the principles of Christian science, so far as it relies upon divine power to heal, but became a believer in the substantiality and usefulness of mental science. About the year 1885 she moved from Illinois to Georgia, and en-

gaged there in the business of healing by the mental science method. While in Georgia, at first, she treated her patients at home, and later she used the United States mails in order to treat patients at a distance. In 1892 she located in Florida, and began the practice of mental healing there. She treated patients at a distance, corresponding with them through the mails, and advertising in journals and pamphlets, and continued to do so until the beginning of these prosecutions. Her business so increased that she employed several clerks and assistants, some of whom had previously been taught by her in lectures on the subject of mental science. She published several books and many pamphlets on the subject. She had between seven and ten thousand patients whom she treated, and from many she received testimonials that they had been benefited or cured. Many of her patients testified on the trial that they had been benefited by her treatment, and knew of others receiving benefit or being cured. Her business was conducted openly. She taught mental science by delivering lectures to classes. She employed and paid a mental scientist to treat a member of her family. She is now 73 years of age, and is an intellectual and educated woman. The advertisements by letters and publications that she continuously made of her business were very optimistic. She claimed to possess the power to cure all, or nearly all, diseases; to remove the conditions that produce poverty, and to inspire or cause those conditions that bring success; to restore hair to its natural color, and to grow it on bald heads; to alleviate or remove many unfavorable conditions; to remove the evidences of old age, and to restore youth, if the patient had faith that it could be done; and she further claimed that by "absent treatment" through a second person she could cure a third person without the latter having knowledge of the treatment. And there was evidence tending to show that she gave the business of the treatment of patients but little, if any, personal attention, and was acutely interested only in the money that she was receiving from the patients; but, on the other hand, there was evidence tending to show that she gave the patients every attention as advertised, and that she often treated the poor without compensation, and that no patient ever complained of her. There was evidence tending to show that it was impossible by absent treatment through a second person to cure or benefit a third person without such third person having knowledge of the treatment, and evidence was offered intended to show that cures could be and were made, and benefit conferred, by such treatment. Other facts applicable to special phases of the case will be stated as such phases are discussed.

### As to Indictments No. 141, No. 160, and No. 161.

The scheme or artifice to defraud as charged in these indictments is substantially the same, and is, in substance, that the defendant had devised a scheme and artifice to—

"Defraud divers persons whose names are to the grand jurors unknown, by publishing and causing and procuring to be published in certain newspapers,

pamphlets and circulars, entitled," etc., "divers advertisements in which it was represented in substance, that she, the said Helen Post, was a healer of all forms of disease and weakness; that she, by a method and process, which she variously termed 'Mental Science,' 'Mental Healing,' 'Mind Cure Treatment,' 'Mind Cure,' and 'Absent Treatment,' could cure every form of disease and weakness, and that she would treat and cure persons affected with disease by the aforesaid method and process, in their absence from her, for three dollars per week or ten dollars per month; and did then and there intend thereby to induce divers persons, whose names are to the grand jurors unknown, to send money to her for the purpose of receiving such alleged treatment, and to fraudulently convert such money as should be sent to her to her own use, *without administering any treatment*, but to fraudulently convert to her own use such money as should be so sent to her for said alleged treatment. And she, the said Helen Post, at the time of so devising said scheme and artifice, and at the time of so causing and procuring to be published the said advertisements and representations, and at and before the time of committing the offense hereinafter mentioned, *did not intend to administer any treatment for any disease or weakness by said method and process, and did not intend to cure any person or persons who might apply to her.* * * *"

These indictments differ as to the letters, etc., alleged to have been deposited in the post office, and in other immaterial matters, but the alleged scheme and artifice to defraud is in substance the same; and the lines which we have here italicized, to the effect that the defendant did not intend to administer any treatment, appear in almost the same words in each indictment. The gist of the scheme or artifice charged in each indictment is that the defendant advertised to practice mental healing, and received pay to treat patients "when she did not intend to administer any treatment." The learned judge who tried the case, in overruling demurrers to the indictments, said:

"It is not the question whether Mrs. Post could or could not do what she promised she would do, but, if at the time of making the representations she intended not to carry them out, she is, in that respect, guilty of the violation of the law."

It is not charged that she falsely pretended that she could cure. No charge is made that she could not treat and cure as advertised, and no charge is made that she knew she could not treat and cure the diseases and conditions as claimed. The point in the indictments which differentiates them from a mere charge of optimism—of professional boasting—is the allegation that she advertised and received money to treat patients, when she did not at the time intend to treat them. The record shows that the advertisement was to treat them by the mental cure method, and it shows that by that treatment was meant that she would direct the patients' thought toward health and against disease, and use her own thought, also, to alleviate or cure. That she did not at the time she so advertised and received pay, or at any time, intend to so treat the patient, is the only charge of bad faith. When an indictment was presented against the same defendant on similar facts, without this charge of bad faith, a demurrer was sustained to it. United States v. Post (D. C.) 113 Fed. 852. This ruling of the learned trial judge is sustained by the opinion of Judge Clark, speaking for the Circuit Court of Appeals of the Sixth Circuit, holding that an indictment under the section in question was not good, which charged a

scheme to defraud only the buyer by offering to sell to him counterfeit money at the rate of $5 for $1, unless it also charged that the defendant did not intend to or would not send the counterfeit money on receipt of the price, for, if the defendant had the counterfeit money, and intended to do as he offered to do—send the $5 on receipt of the $1—there was no deceit or scheme to defraud his correspondent, within the meaning of the statute, although the offer may have been a violation of another law. Milby v. United States, 109 Fed. 638, 48 C. C. A. 574. See, also, Horman v. United States, 116 Fed. 350, 53 C. C. A. 570; Milby v. United States, 120 Fed. 2, 57 C. C. A. 21. If the defendant intended to administer and did administer the treatment she advertised, she is not guilty of the fraud charged, although the treatment may be in fact as valueless as the counterfeit money in the Milby Case. There was no conflict in the evidence as to the advertisements. The sole disputed question of fact was: Did she, or did she not, intend to administer the mental treatment?

On the trial of the issue joined on the plea of not guilty, the burden was on the United States to prove, as the essential part of the scheme or artifice, that the defendant, at the time of the committing of the offense charged, "did not intend to administer any treatment for any disease or illness by said method or process, or any other method or process." It is certainly difficult to make such proof. It is true that motive and malice, which are mere emotions or invisible conditions of mind, may be proved by actions—as, for an instance, a killing with a weapon may prove malice. But the killing is an outward, visible action. Here the requirement is to prove an intention of the defendant at a certain time not to use her thought in a certain way at a subsequent time, no visible or tangible action being involved. It would not serve the purpose to say that she could not so use her thought—that her promise was impossible of performance—for that is not charged, and to seek to condemn her for not doing a thing is to assert that she could do it if she chose. The government undertook to make this proof by showing that she did not administer any treatment, intending that the jury should infer by her failure to administer the treatment that she did not intend to do so from the first. The record shows that the government entirely failed in this effort. It was shown that the mode of treatment advertised required the defendant to advise and direct the patient, and to use her own thought in behalf of the patient. The patient was directed by the defendant's circulars and letters (with other advice not material to mention) to "sit for treatment"—to go alone for 15 minutes each day and hold himself receptive to the thought of the defendant. The government offered evidence tending to show that the defendant did not "sit" to treat the patients, or devote any special time to treatment in that mode. But it does not appear that this sitting on her part was a necessary part of the treatment. There is nothing in the record to indicate that the patients were deprived of any part of the advertised treatment by her failure to "sit" for them. There is nothing to show that the patients failed to get substantially the treatment bargained for. On the contrary, it was affirmatively shown that she sent, or paid clerks to send, printed directions and advice to all patients, and wrote, or employed and directed clerks to write, to them

letters to encourage, advise, and direct them. That was all the patients had a right to expect, except that the defendant would use her thought in their behalf. She testified that she did this. It was a thing that she could do as well in one posture or place as in another, if she could do it at all. But if the government were to prove beyond a reasonable doubt that she did not so use her thought, this would not meet the requirement of the indictments. It must prove not only that she did not administer this invisible and intangible treatment, but that she did not intend to administer it. If it be conceded that the defendant believed she had esoteric power or knowledge (and these indictments are silent on the subject), there is no evidence in the record to sustain the charge that she did not intend to use it in behalf of her patients; that is, that she did not intend to treat them by the advertised mental cure method.

In School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90, the Supreme Court had occasion to construe Rev. St. U. S. § 3929 [U. S. Comp. St. 1901, p. 2686], which authorizes the Postmaster General, upon evidence satisfactory to him, to instruct postmasters to stamp "Fraudulent" and return all registered letters which are directed to a person conducting any "scheme or device for obtaining money through the mails by means of false or fraudulent pretenses, representations or promises." The healing business under consideration in that case was founded almost exclusively on the proposition that the mind of the human race is largely responsible for its ills, and is a perceptible factor in treating and curing them. Mr. Justice Peckham, delivering the opinion of the court, said:

"There can be no doubt that the influence of the mind upon the physical condition of the body is very powerful, and that a hopeful mental state goes far in many cases not only to alleviate, but even to aid very largely in the cure of, an illness from which the body may suffer." The court reached the conclusion that "these statutes were not intended to cover any case of what the Postmaster General might think to be false opinions, but only cases of actual fraud in fact, in regard to which opinion formed no basis." "The opinions entertained," said the court, "cannot, like allegations of fact, be proved to be false, and therefore it cannot be proved, as matter of fact, that those who maintain them obtain their money by false pretenses or promises, as that phrase is generally understood, and as, in our opinion, it is used in these statutes."

The statute so construed is somewhat like the one involved here, and we think the construction sustains our conclusion that the mere allegation that the defendant was engaged in the business of mental healing is not an allegation of a "scheme or artifice to defraud." The only fraud charged, therefore, is that she did not intend to administer the advertised treatment for which she was paid. The evidence not tending to sustain this charge, the Circuit Court should have directed a verdict of not guilty on these indictments.

### As to Indictment No. 176.

This indictment presents other issues. This will be made clear by excerpts from that part of it charging the scheme or artifice to defraud:

"That one Helen Wilmans Post, unlawfully, wilfully, fraudulently and knowingly devised a scheme and artifice to defraud divers and sundry persons, whose names and postoffice address is at present to the grand jurors unknown, and the public generally, which said scheme and artifice to de-

fraud was to be effected by opening and intending to open correspondence, and communication with such divers and sundry persons, as aforesaid, by means of the postoffice establishment of the United States, and by inducing and inciting such divers and sundry persons to open correspondence and communication with her, the said Helen Wilmans Post, by means of the said postoffice establishment of the United States, which said scheme and artifice to defraud was, in substance and effect, as follows, to-wit: That is to say, the said Helen Wilmans Post then and theretofore representing and advertising herself to be a Mental Science Healer, and practitioner of Mental Healing and Mind Cure, did before, and at the time of the committing of the offenses hereinafter mentioned, fraudulently assume to, and did pretend to practice what she termed 'Absent Treatment,' by which means and practice she published, advertised and procured to be advertised of and concerning herself, that she could and would cure various and all kinds of diseases known to man and woman, and did hold out to the public generally and to divers and sundry persons, that she was able to, and could and would by means aforesaid, treat and cure all patients and persons desiring and applying for said treatment of, and for, any and all diseases, old age, poverty, liquor habit, drunkenness, and all undesirable conditions; said so-called 'Absent Treatment' for cure aforesaid being conducted by her, pretending and advertising herself, and procuring herself to be so advertised in the name of Helen Wilmans, to be able to cure third persons through the instrumentality of some second person, of all such said diseases, old age, poverty, liquor habit, drunkenness, and undesirable conditions, although the fact of such alleged treatment through such second person was unknown to such other, or third person, no matter at what distance from each other and from her, the said Helen Wilmans Post, representing as aforesaid, that she could and would send such other or third persons, through such second person, her thoughts, vitalizing, healing power, and healing thoughts for the cure of all diseases, old age, poverty, liquor habit, drunkenness and undesirable conditions, by such second person, holding such third person, receptive to, and in close relation with, the thoughts of her, the said Helen Wilmans Post, and further represent, by letters written and caused to be written by her, and various publications and circulars, published and caused to be published and circulated, through the United States mails, at Seabreeze, by her, as a part of said scheme; that she could and would cure all persons of disease, old age, poverty, liquor habit, drunkenness and all undesirable conditions, by such said mode of absent treatment; that it was designed and intended that such said divers and sundry persons should be induced and procured to apply for and take, such absent treatment, by means of certain letters, at present to the grand jurors unknown, written and caused to be written by her, the said Helen Wilmans Post, together with various advertisements and publications, addressed to such divers and sundry persons, and deposited and caused to be deposited by her, the said Helen Wilmans Post, in the United States mails, and postoffice at said Seabreeze, for transmission and delivery to such said divers and sundry persons, to the grand jurors unknown, for the furtherance of and a part of said scheme; said letters, publications and advertisements, so addressed and mailed, for the furtherance and part of such fraudulent scheme, containing, and giving advice, and instruction to such divers and sundry persons induced to apply for, and take such said treatment for third persons and rules for such second person to follow.

"The method employed by her, the said Helen Wilmans Post, to bring about such pretended results and so-called cures aforesaid, being to require the said second person to sit for treatment for such third person, at stated periods, instructing them as follows: 'If you are sitting for treatment for another person who is being treated, without his or her knowledge, you must hold the thought, that you are the medium for the transmission of my thoughts to that person; you must hold both the person and myself in your thought, and feel that you are the link in the chain between us,' and other instructions at present to the grand jurors unknown, directing such said second person as aforesaid, to sit at given times for certain periods instructing the applicant or second person, for the treatment of

other or third person, that the healing thought of her, the said Helen Wilmans Post, could and would be transmitted through them to such third person, and cure him or her, as aforesaid, which such representations were false, and well known to her, the said Helen Wilmans Post, so to be, at the time of making them, and devising said scheme, and mailing and causing to be mailed, as aforesaid, such letters and publications, hereinbefore and hereinafter mentioned, and at the time of the committing of the offenses hereinafter mentioned, and not capable of performance by her, the said Helen Wilmans Post; that the price charged for such absent treatment of a third person through a second person generally, was three dollars per week, or ten dollars per month, payable in advance, but varying according to circumstances, and by which said fraudulent scheme she acquired and appropriated to her own use, large sums of money, the amount thereof being to the grand jurors unknown; and that she sent various advertisements through the mails to induce such said divers and sundry persons to take such absent treatment, as aforesaid, of and by her, the said Helen Wilmans Post for the cure of disease, old age, poverty, liquor habit, drunkenness and undesirable conditions, and to fraudulently obtain money therefor; that such said scheme was fraudulent, fictitious and ineffective for the cure of any disease, old age, poverty, liquor habit, drunkenness and undesirable conditions; that such scheme was a deceit and a fraud at the time of devising the same, as aforesaid, and continued so on up to and at the time of the committing of the offense, hereinafter mentioned, and was so known to and understood by the said Helen Wilmans Post to be a deceit and fraud; that the letters to applicants for such pretended treatment, and during the time thereof after engagement for such said treatment, sent through said mails and postoffice establishment in the furtherance of said scheme, were not written by her, the said Helen Wilmans Post, but were written by typewriter and hand in a stereotyped form and manner by her employés, stenographers and clerks, by her direction."

Here it will be observed is a distinct charge that the representations made by the defendant as to her ability to cure, etc., were false, and were well known to her to be false; that the scheme was fraudulent and fictitious, and that her promised treatment was ineffectual for the cure of any disease, and was a deceit and a fraud at the time of devising the same, and was known to the defendant to be a deceit and a fraud; and that her promises were incapable of performance. The gravamen of the charge here is the falsity of the pretenses, and that such falsity was known to the defendant. The allegation of mala fides pervades the whole scheme. It does not present a question of the lawfulness of the calling of a mental healer, or whether or not mental science is a fraud and humbug, but it presents the question of the good faith of the defendant. It does not assume, as the other three indictments, that she could administer the treatment promised; but it is expressly alleged that she could not, that her representations were false and known to her to be false, and that her promises were impossible of performance. It is also alleged in this indictment that the defendant was not "intending to give such treatment and to cure patients," but it is not assumed that she could, and, on the contrary, it is averred that she could not, and that she knew she could not. If she could not, and knew she could not, it follows, perhaps, without allegation, that she was not intending to give such treatment.

A great many exceptions were taken and errors assigned upon the charges given and refused. While it is impracticable to comment upon all of them, it seems proper that we should express an opinion on such questions raised by the record as may arise on the new trial.

The case should be tried with the distinct understanding that the practice of mental healing is, in federal law, as lawful as healing with drugs. As to the right to use the postal establishment of the United States, no discrimination is made between those whose vocation is healing, whether they be allopathists, homeopathists, osteopaths, or mental scientists. But the use of the mails in furtherance of an artifice or scheme to defraud, under the guise of practicing the vocation of healing, is equally condemned by law, whether the accused be mental healers or the votaries of other schools. The statute is directed against any scheme or artifice to defraud, and it includes everything designed to defraud by representations as to the past or present, or by suggestions or promises as to the future. Durland v. United States, 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709. This indictment involves questions as to the belief and intention of the defendant. Every man and woman has the right to believe what he or she chooses to believe. And one who holds any belief may engage in practice founded upon it, unless he thereby injures others in person, reputation, or property, or disturbs the peace and welfare of the public. A belief, of course, cannot with impunity be carried into conduct contrary to law. The ultimate question of fact before the jury was as to the good faith of the defendant, and that question involved her belief in her representations and promises. While her belief is not the subject of direct proof, it may be ascertained from circumstances and by proof of her actions and declarations. If she was practicing her profession in good faith, the fact that she received compensation for her advice and services is of no consequence; the regular physician, the lawyer, and the preacher do the same. The cardinal inquiry was: Was she engaged in the business of treating and curing, or endeavoring to cure, applicants, or was she practicing a scheme or artifice to defraud? It is not a question as to whether or not the method of treatment is one that should be approved or disapproved by the court and jury. If it was as baseless as mundane astrology, it makes no difference, if the defendant believed in it and practiced it in good faith and without positive intention to defraud. If, without belief in her professions or proposed treatment, and with knowledge that her representations were false, she made them to defraud, the fact that mental healing is a lawful vocation does not protect her.

After evidence had been offered tending to prove the charges of the indictment, the defendant offered evidence by way of defense, and, among other things, sought to prove that she possessed the power to treat and cure people as she had advertised. The court instructed the jury that:

"When one contends that he has made new discoveries in science or art, opposed to the general experience of man for ages, and directly in conflict with the generally accepted rules, seeks to gain money or secure profit thereby, the burden of proof of the truth of such discovery is upon the party making the claim, and such contention must be satisfactorily proved before it can be accepted."

This charge indicates that the court, considering the evidence offered by the defendant, concluded that it set up as a special defense that the defendant possessed the extraordinary power which she claimed, and instructed the jury that the burden of proof was on her to satisfactorily

prove such contention. There are other and similar expressions in the charge, which, in effect, direct the jury to return a verdict of guilty "if the defendant has failed to satisfy you of the truth of the powers she claimed." This view of the court is made plainer by a further instruction. Referring to the power which the defendant claimed to have, the jury were instructed that:

"This power is not recognized as a natural law by the experience of mankind, and that she is attempting to establish a new and unrecognized law of nature; and therefore the burden rests upon her to satisfy you that she possessed such power, and could do what she promised and advertised to do."

Here we have the distinct assertion that the burden rests upon her to satisfy the jury that she possessed such power.

In a criminal trial, where the defendant's only plea is, "Not guilty," the general rule is unquestioned that the burden of proof, and the obligation to convince the jury of the prisoner's guilt beyond a reasonable doubt, as to all essential matters, including the criminal intent, is upon the prosecution throughout the trial, and that there is no shifting of the burden of proof during the trial. Underhill on Criminal Evidence, § 23; Potter v. United States, 155 U. S. 438, 15 Sup. Ct. 144, 39 L. Ed. 214. Where the defendant offers, under the plea of not guilty, some affirmative defense—as, for example, the defense of insanity—the cases in the state courts are in conflict as to the question on whom rests the burden of proof. Underhill on Criminal Evidence, § 157; 2 Bishop, New Crim. Proc. § 669. But on principle, now sustained by a large majority of the state courts, the burden in such cases is on the prosecution. 2 Bishop, New Crim. Proc. § 673. In federal jurisprudence there is no question as to the proper rule. In Davis v. United States, 160 U. S. 469, 16 Sup. Ct. 353, 40 L. Ed. 499, it was held that the "burden of proof," as those words are understood in criminal law, is never upon the accused to establish his innocence, or to disprove the facts necessary to establish the crime for which he is indicted. It is on the prosecution from the beginning to the end of the trial, and applies to every element necessary to constitute the crime. This rule was applied to a case where the defense was insanity. If, in this case, we look on the defense made by the defendant—that she had the power to effect the cures that she claimed she could make—as an affirmative and separate defense, still it would be the unquestioned rule of law in the federal court that, if the evidence she offered was sufficient to create a reasonable doubt as to her guilt, or as to any fact necessary to be proved to secure her conviction, she would be entitled to an acquittal. She is not required to prove any fact to the satisfaction of the jury. In other words, if, on the whole evidence, including that offered by both sides, the jury have a reasonable doubt as to her guilt, she is entitled to an acquittal of the specific offense charged. This being the law, it was error, we think, to instruct the jury, in any aspect of the case, that the burden of proof rested upon the defendant to satisfy the jury that she possessed the power to cure diseases, as claimed, and that her contention must be satisfactorily proved. It is one of the affirmative averments of the indictment that the representations made by the defendant were false and not capable of performance by her, and

the burden was on the United States to prove it. It is true that the learned trial judge correctly charged the doctrine of reasonable doubt in general terms, but that would not, in our opinion, remove the impression which must have been made on the minds of the jury—that the burden was on the defendant to prove a part of her defense to the satisfaction of the jury.

Referring to the evidence offered by the defendant tending to show that she could effect the cures by the method she was practicing, and especially to the claim that she could "send by emanations from her own mind such power as will, after passing through the mind of a second person, influence the physical condition of a third person," the learned judge asserted that this power was not recognized as a natural law by the experience of mankind, and that the defendant is attempting to establish a new and unrecognized law of nature. He then said to the jury that where "testimony of itself is directly contrary and in opposition to the well-established laws of nature, accepted by all men from the experience and study of ages, such testimony may be properly ignored without contradiction." A jury may unquestionably be properly instructed to disregard evidence that they find to be false. Allen v. United States, 164 U. S. 492, 499, 17 Sup. Ct. 154, 41 L. Ed. 528. And under the practice of the federal courts, the judge may express his opinion as to the weight or effect of evidence or the credibility of witnesses; but, if evidence is admitted as, and is, legal and relevant, the jury, we think, should not be peremptorily directed to ignore it. If it be of a kind that greatly taxes the credulity of the judge, he can say so, or, if he totally disbelieves it, he may announce that fact, leaving the jury free to believe it or not. If the jury concur in the view expressed by the judge, they may entirely disregard such evidence in their verdict; but to direct the jury to ignore it is to tell them not to consider it at all, even to determine whether it deserves credence or not. We are aware of the fact that this instruction related to evidence, part of which, perhaps, would seem to many, if not all, intelligent minds, incredible; but, if evidence is admissible at all, we can see no reason why it is not to be passed on by the jury. We are not holding that the defendant has a right to embark in a business, and to insist that its legality shall be tested by principles beyond the understanding of others, and not by such knowledge as the courts and juries possess. The case must, of course, be tried and tested by the rules of law and by common human understanding. But when a question of fact is tested, although it may involve the existence of a power not generally recognized, evidence bearing on the question must be considered as in other cases. Science has not yet drawn, and probably never will draw, a continuous and permanent line between the possible and impossible, the knowable and unknowable. Such line may appear to be drawn in one decade, but it is removed in the next, and encroaches on what was the domain of the impossible and unknowable. Advance in the use of electricity, and experiments in telepathy, hypnotism, and clairvoyance, warn us against dogmatism. The experience of the judiciary, as shown by history, should teach tolerance and humility, when we recall that the bench once accounted for familiar physical and mental conditions by witchcraft, and that, too, at the expense of the lives of innocent men

and women. In that day, it was said from the bench that to deny the existence of witchcraft was to deny the Christian religion. Juries would have done better. Then and now questions of fact were best tried by jury.

We are of the opinion that the court ruled correctly in refusing to grant the request of the defendant to direct an acquittal on indictment No. 176.

In dealing with the issues raised by the record, we have not intended to express any opinion as to the substantiality of mental science, or whether it is founded on some occult natural law or on mere parade and mummery. The court is not a society for psychical research, charged with the duty of forming and announcing opinions on that subject. We have endeavored only to make it plain that there is nothing in this case to require a departure from the ordinary rules of evidence and familiar criminal procedure.

The judgment must be reversed, and the case remanded for a new trial.