STOCKTON v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. April 15, 1913.)

No. 1,879.

1. POST OFFICE (§ 35*)—"MISUSE OF MAILS"—SCHEME TO DEFRAUD—OFFENSE—REQUISITES.

Pen. Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p: 1653]), provides that whoever, having devised or intended to devise any scheme or artifice to defraud, shall, in executing the fraud, place any letter, circular, pamphlet, or advertisement addressed to any person residing within or without the United States in the post office, shall be punished, etc. *Held* that, in order to constitute an offense under such section, there must be a scheme or artifice to defraud, which the accused has devised or is intending to devise, and a use of the mails to execute the scheme or artifice, or an attempt to do so.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

2. POST OFFICE (§ 35*)—MISUSE OF MAILS—"DEVISE."

The term "devise," as used in Pen. Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p. 1653]), providing that whoever, having devised a scheme to defraud, shall place any letter or circular in the post office in furtherance of such scheme, conveys the idea of being devious, contriving, disingenuous; a scheme, machination, intrigue, or plan whose appearance differs from the reality; an artifice; a trick, false pretense or token. The degree to which this conception of the language of the statute is satisfied is, however, not material, though the first ingredient of the offense, to wit, the devising of a scheme or artifice to defraud, does not exist unless the scheme or artifice devised or intended to be devised is one to defraud.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, vol. 3, pp. 2047–2049; vol. 8, p. 7636.]

3. POST OFFICE (§ 48*)—MISUSE OF MAILS—SCHEME TO DEFRAUD—INDICTMENT.

An indictment, alleging that defendant, a manufacturer of loaded dice, marked playing cards, etc., designed and intended to defraud persons induced to play with the buyers thereof, devised a scheme or artifice to defraud such persons, and, intending to so defraud them, did unlawfully, etc., place in the post office a printed catalogue directed to certain individuals designated, by which defendant sought to sell such articles to the addressees, intending that they should use the same in playing with third persons, and that the latter should be defrauded. *Held* that since the mailing of defendant's catalogue advertising the sale of such articles was not an element of a scheme to defraud, and the scheme to defraud, if any, would be that devised and perpetrated by the buyers of the apparatus when they used the same, in which defendant had no part, his actual intent being coextensive only with his own transaction in selling or offering to sell articles which could be misused, the indictment did not allege the offense defined by Pen. Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p. 1653]), prohibiting the use of the mails in furtherance of a scheme to defraud, and was therefore demurrable.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. § 48.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Eugene M. Stockton was convicted of using the post office establishment in furtherance of a scheme to defraud, and he brings error. Reversed, with directions to sustain a demurrer to the indictment.

The plaintiff in error seeks review of a judgment of conviction and sentence herein upon an indictment charging violation of section 215 of the Penal Code.

The first count of the indictment charges the defendant with having "devised a scheme and artifice to defraud a class of persons," i. e., "persons * * * whom the said Eugene M. Stockton intended would engage in playing games of chance for money and other valuable consideration, in the manner and by the means hereinafter in this count of the indictment set forth, with one Ike Nichols of Kingsville in the state of Texas," which scheme and artifice to defraud was and is as follows:

"That said Eugene M. Stockton planned, devised and intended that the said Ike Nichols would purchase from him, said Eugene M. Stockton, and planned, devised and intended that he, the said Eugene M. Stockton, would sell and deliver to the said Ike Nichols for the purpose hereinafter mentioned, certain gambling devices, to wit, loaded dice and marked playing cards hereinafter more particularly described, for money to be paid therefor by the said Ike Nichols to the said Eugene M. Stockton, and the said Eugene M. Stockton planned, devised and intended that the said Ike Nichols would engage the said persons intended to be defrauded in playing games of chance for money and other valuable consideration to be wagered thereon in the manner commonly known as gambling; and the said Eugene M. Stockton planned, devised and intended that the said dice so to be sold as aforesaid, would be constructed in such manner as to enable the said Ike Nichols to cause said dice in the playing of such games of chance with the said persons intended to be defrauded, as aforesaid, to fall on certain six sides of the said dice, to be determined in advance, as he, the said Eugene M. Stockton, then well knew, without intending that the said persons intended to be defrauded should have any knowledge that the said dice were so constructed as aforesaid; but on the contrary, he, the said Eugene M. Stockton, by and through the said Ike Nichols, intended to cause the said persons intended to be defrauded, to believe that the said dice were constructed in the same manner as ordinary dice are commonly constructed, to wit: without any mechanical or other device by which it could be determined in advance on which of the six sides the said dice should fall in the playing of the said games of chance."

The indictment further described the marked playing cards, and contained similar averments respecting the plaintiff in error's intention that said Nichols would, in the use of such cards, have an unfair advantage over the persons intended to be defrauded; that the defendant "so having devised the said scheme and artifice, in and for executing the said scheme and artifice, in and for attempting to do so, and in and for defrauding by and through the said scheme and artifice the said persons intended to be defrauded, unlawfully, willfully, fraudulently and feloniously, did place in the post office of the United States, at Chicago, and cause to be placed in the post office of the United States, to be sent and delivered by the said post office establishment of the said United States to said Ike Nichols at Kingsville in the state of Texas aforesaid, a certain printed catalogue" (not set forth in the indictment, but identified).

The second count is similar except in respect of the alleged gambling device contemplated to be sold and the person to whom the catalogue was mailed; also setting forth a letter alleged to have been written by the defendant, accompanying the catalogue, amplifying some of its contents, and containing discussion of the use of gambling devices.

The facts in the case are that the plaintiff in error, Eugene M. Stockton,

in December, 1910, at the time of his indictment, was engaged in the business of manufacturing and selling magical goods, cards, dice, and kindred articles, including those specified in the indictment. Catalogues, describing the goods and giving prices of the articles manufactured and offered to be sold, were issued and sent through the United States mail to customers, and persons, firms, and individuals to whom such merchandise might be sold.

It is undisputed that catalogues were sent to the two persons named in the indictment; that they contained detailed descriptions of loaded dice, marked playing cards, and other gambling equipment referred to in the indictment.

C. S. O'Meara, of Chicago, Ill. (Bernhardt Frank and Edward Maher, both of Chicago, Ill., of counsel), for plaintiff in error.

James H. Wilkerson, of Chicago, Ill. (Henry W. Freeman and Walter P. Steffen, both of Chicago, Ill., of counsel), for the United States.

Before BAKER and KOHLSAAT, Circuit Judges, and GEIGER, District Judge.

GEIGER, District Judge (after stating the facts as above). [1] Section 215 of the Penal Code, so far as pertinent to the question presented, is as follows:

"Whoever, having devised or intended to devise any scheme or artifice to defraud, or for obtaining * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, package, writing, circular, pamphlet, or advertisement, whether addressed to any person residing within or outside the United States," etc.

It will be observed that the ingredients which go to make up the offense under this section are:

(1) A scheme or artifice to defraud which the accused has devised, or is intending to devise.

(2) The use of the mails for the purpose of executing such scheme or artifice, or attempting to do so.

[2] Assuming that marked cards and loaded dice may be—or are, almost exclusively—used to cheat or defraud in gambling, has the plaintiff in error in selling or offering to sell to one knowingly desiring to purchase these articles at an agreed price, devised or intended to devise a scheme or artifice to defraud? Does he, by mailing a catalogue accurately descriptive of these articles and their prices, execute or attempt to execute such scheme or artifice? Without attempting comprehensively to define the language of the act, it is apparent that each of the words "devise," "scheme," and "artifice" embodies elements found in the other two. As understood in the law of crimes or torts, to "devise" conveys the idea of being devious, contriving, disingenuous; a "scheme," machination, intrigue, or plan whose appearance differs from the reality; an "artifice"; a trick, false pretense or token. But the degree to which this conception of the language of the statute is satisfied is never material, nor does the first essential ingredient of the offense exist, unless the scheme or artifice devised or intended to be devised is one to *defraud*.

[3] We start, as we must, with the concession that, although marked cards and loaded dice may be used, as stated, they are none the less lawful subjects of commerce. They may be manufactured, sold, and

purchased. If, therefore, upon purchase and sale, the parties thereto understand precisely the subject-matter and the seller proposes to and does give to the purchaser just what the latter wants—even though it be gambling apparatus—the transaction is an ordinary contract. The seller has neither *devised* nor executed a *scheme* or *artifice*. But the government, to sustain the indictment and conviction in the present case, seeks to impute or ascribe to the plaintiff in error the fraudulent intent of the purchaser or possessor of the gambling devices, and thereby charge a fraudulent scheme. Its claim is thus stated in the brief:

"That Stockton, the defendant below, intended that the persons to be defrauded would engage in playing games of chance for money and other valuable consideration, with the persons to whom the catalogue described in the indictment was mailed, and that he planned, devised, and intended that these addressees should purchase from him (Stockton), and that he would sell them certain gambling devices, namely, loaded dice, marked playing cards, electro magnets, etc., by means of which the persons intended to be defrauded, while playing at games of chance with the possessors thereof, were to be defrauded of their money by being deprived of a fair and equal chance of winning in playing such games."

In other words, plaintiff in error by mailing the catalogue intended to induce Moore and Nichols to purchase gambling apparatus from him: if they purchased, he intended that they would engage persons at play and defraud them. Therefore he devised a *scheme* to defraud, bcause he intended to supply the instrumentality, i. e., marked cards, etc. Now, if plaintiff in error had, through personal solicitation, sold or offered to sell this apparatus to Moore and Nichols; or if they had called at his place of business and entered into and concluded negotiations with him, there would in each case be present every element disclosed in the indictment. The *mailing* of the catalogue is not an element of the scheme; the arbitrary allegation of the intention of plaintiff in error that Moore and Nichols would engage persons in play, etc., is in effect an allegation of knowledge on his part that such purchasers would put the apparatus to a use for which it was obviously intended—and it adds and can add nothing unless and until by appropriate averment of facts it appears that he was to be in some relation of confederacy or participation, beneficial or otherwise, in such use. The real scheme or artifice to *defraud,* if any, is that devised and perpetrated by the possessors of the apparatus when they use it. The actual intent of the plaintiff in error was coextensive only with his transaction in selling or offering to sell; and in case he sold—the subject-matter being disclosed and known—his whole intention and expectation would have been fully realized. His relation to the matter would have been at an end; and, granting that Nichols and Moore would or might defraud persons as alleged in the indictment, they would not do so upon the prompting nor in obedience to any act or intention of the plaintiff in error. So, too, the defrauded victims could point to no act of, or circumstance affecting, plaintiff in error, in justifiable reliance whereon they could claim to have entered into a situation wherein *he* defrauded them. Therefore, to uphold the indictment by imputing to him the fraudulent design or acts of subse-

quent possessors of the gambling apparatus, without averment or proof of participation therein, would by construction enlarge the statute. The statute (except in the particulars to be noted) neither defines nor denounces, but aims only to punish using the mails in effectuating, what, *without it, would still be,* schemes or artifices to defraud.

This application of the statute is quite conclusively demonstrated by the course of its amendment and construction respecting counterfeit money and transactions specifically enumerated. Prior to the amendment by act of March 2, 1889, c. 393, 25 Stat. 873 (U. S. Comp. St. 1901, p. 3696), the section under consideration was limited to forbidding the use of the mails to effectuate schemes or artifices to defraud; but by such amendment there was added, in the disjunctive, the particular specification, now found, denouncing schemes or artifices to sell or deal in counterfeit money, "paper goods," the "sawdust swindle," and the like. The Supreme Court, in passing upon the amended section, said:

"The statute, in very words as well as in manifest intent, applies to any person who devises either a scheme to defraud, or a scheme to sell counterfeit money or counterfeit obligations of the United States, provided the scheme is intended to be effected, and is effected, by communications through the post office. This indictment charged, not a scheme to defraud, but a scheme to sell counterfeit obligations of the United States; and therefore no proof of a scheme to defraud was necessary to support it." Per Gray, Justice, Streep v. United States, 160 U. S. 128, 16 Sup. Ct. 244, 40 L. Ed. 365.

The distinction between cases now, but not formerly, comprehended by the statute, is thus stated by Judge Adams in Lemon v. United States, 164 Fed. 953, 90 C. C. A. 617:

"There is an obvious difference between schemes to defraud and those to sell or deal in counterfeit money. The one necessarily involves a scheme to defraud some person or persons, while the other may or may not involve such scheme. *It may be only a scheme to do an unlawful act in which all concerned knowingly participate.* * * *

"The amendment of 1889, instead of limiting, expanded the operation of the statute. It brought within its comprehension, in addition to what was there before, the subject of dealing in counterfeit and spurious money and other articles there specified."

Prior to the amendment it therefore was possible for one person to communicate to another an undisguised offer to sell counterfeit money. It was not a scheme to defraud within the meaning of the act, although counterfeit money could be dealt in only in violation of law, and was universally recognized as a means to defraud. How much more clearly is this true of gambling devices which may be lawfully bought and sold. . Were it not true, we would have the anomalous situation of permitting the sending of gambling devices themselves through the mail, but forbidding communications respecting them. The plaintiff in error, without objection on the part of the government, could have sent the loaded dice or marked cards through the mail to Nichols and Moore, but could not have sent a letter soliciting the purchase.

Counsel for the government urge the authority of Milby v. United States, 120 Fed. 1, 57 C. C. A. 21, in support of the indictment and conviction. The case will be examined in the light of an earlier determination (109 Fed. 643, 48 C. C. A. 574) by the same court involving

the same defendant. The facts were these: Milby was originally indicted for using the mails in attempting to sell counterfeit money. Demurrers were overruled, and motions in arrest of judgment denied. He was convicted. Upon appeal (109 Fed. 643, 48 C. C. A. 579), the indictment was held insufficient because the scheme was—

"plainly a direct, undisguised proposition to sell counterfeit money. * * * It is plainly evident," said the court, "from the course pursued in relation to the letter by the postmaster at Albany, Or., that he was left in no doubt or difficulty whatever as to the meaning and object of the proposition contained in the defendant's letter. If there was any misrepresentation, direct or indirect, or other facts and circumstances, which would constitute a scheme devised by the defendant to defraud Stites, the particulars in this respect are not given in this indictment. There is no averment to the effect that the defendant was not engaged in making counterfeit money, and in every way prepared to comply with his proposition if accepted. In what method and by what scheme was Stites to be deceived or defrauded, looking alone to the facts disclosed in this indictment? * * * Or, again, putting the transaction in a past aspect, if Stites had concluded to accept the proposition, and use the spurious money offered, and had sent money to the defendant, and received counterfeit money in return therefor at the agreed rate of exchange, in what respect would Stites have been defrauded or misled? In this last aspect of the case both the defendant and Stites would have committed an offense, but Stites would not have been defrauded or deceived. The proposition contained in the letter was entirely devoid of artfulness, and could not have been misunderstood in the ordinary case; and, as we have said, no exceptional circumstance or fact is alleged in the indictment."

It is to be noted that, although the case was decided many years after passage of the amendment of March 2, 1889, no reference is made to such amendment, nor to the case of Streep v. United States, supra, which definitely construed it as expanding the statute to comprehend situations not theretofore within its terms—and comprehending precisely the accusation against Milby.

A new indictment, charging in several counts the subject-matter of the first prosecution, was then returned. After trial and conviction, the case was appealed, being reported as Milby v. United States, 120 Fed. 1, 57 C. C. A. 21, and now relied upon. It was urged that the first count, which charged an intention to defraud persons through subsequent circulation of the money, was insufficient. The court said:

"It is further argued that the first count, which charges an intention to defraud persons unknown by subsequent circulation of the counterfeit money after its receipt by the persons to whom it was originally sent, is insufficient. It is urged that, as the person ordering counterfeit money would know what he was to get, he could not be defrauded. We think, however, that the allegation of the indictment as to defrauding others by the subsequent circulation of the counterfeit money brings it within the statute. It must always be borne in mind that the use of the mails in aid of schemes of spoliation is the thing sought to be prevented and punished."

But the court further held that, even if defendant's contentions were sound, the count was sufficient as charging an offense *within the amendment,* and the conviction was sustained because other sufficient counts of the indictment were covered by the proofs and a verdict of guilty. However, the infirmity of the position taken in the language quoted is this: It is always possible to impute to a seller knowledge, and (in an inaccurate sense) an intention, that an article sold may be

put to uses for which it is obviously intended. Hence, if the wrongful intent or scheme of the purchaser of counterfeit money could be ascribed to the seller as *his* scheme, there would have been no necessity for amending the statute. The sale, or offer to sell, would be a *devising,* and the *scheme* or *artifice* could always be charged and found, solely upon the *inherent character* of counterfeit money.

The views which we have expressed respecting the scope of the statute and its application to the indictment· render unnecessary extended discussion of the facts established by the testimony. The plaintiff in error mailed the catalogues which were descriptive of the articles in his possession and described in the indictment. He sustained no relations toward Moore and Nichols, the addressees, other than such as arose through a desire to sell to them articles described in the catalogue. Until, by appropriate amendment, the scope of the statute is further expanded, it does not and cannot comprehend the situation thus disclosed in the proofs; and neither the indictment nor such proof shows either a scheme or artifice to defraud devised by the plaintiff in error, nor an execution or attempted execution thereof by him, through the use of the mails.

The judgment is reversed, with directions to sustain the demurrer to the indictment, and to discharge the defendant.